968 A.2d 606

**STATE BOARD OF PHYSICIANS**

**v.**

**Michael S. RUDMAN.**

**No. 1856, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

March 27, 2009.

2

**4**

Thomas W. Keech (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for Appellant.

Frederick W. Goundry, III (Varner & Goundry, on the brief), Frederick, for Appellee.

Panel: KRAUSER, C.J., WOODWARD and PAUL E. ALPERT (Ret., Specially Assigned), JJ.

KRAUSER, Chief Judge.

The Maryland State Board of Physicians (the "Board"), appellant, revoked the medical license of Michael S. Rudman, M.D., appellee, after he entered an *Alford* plea to second-degree assault, which, given the nature and circumstances of the assault, the Board determined to be a crime of moral turpitude. The Circuit Court for Frederick County vacated the Board's revocation order, declaring that the Board erred in making that finding because, in its view, the facts of the

assault were in dispute and thus required a hearing. This appeal followed.

The Board presents four issues for our consideration. Renumbered and only slightly rephrased to facilitate review, they are:

I.   Whether an *Alford* plea is a guilty plea within the meaning of section 14–404(b) of the Health–General Article of the Maryland Code (2005 Repl.Vol.);

II.  Whether a probation before judgment under section 6–220 of the Criminal Procedures Article of the Maryland Code (2008 Repl.Vol.) nullifies the guilty plea on which the probation was based;

III. Whether the crime of second-degree assault constitutes a crime of moral turpitude for professional disciplinary purposes when the perpetrator is a physician and the assault was the repeated rubbing of his erect penis against the back of a female patient without her consent while providing medical treatment in his medical office;  and

IV.  Whether, in a case arising under section 14–404(b) of the Health Occupations Article of the Maryland Code (2005 Repl.Vol.), the Board must grant a request for an evidentiary hearing by a respondent who proffers facts and conclusions contrary to the facts set forth in a certified court record.

## Background

Licensed to practice medicine in Maryland, Rudman, for the past thirty years, has practiced medicine in the Middletown area of Frederick County.  In July 2005, Ms. E., a patient of Rudman's, filed a complaint with the Board that Rudman had inappropriately touched her breast, vaginal area, and lower stomach.  As a result of this complaint, the Board began an investigation and notified the Frederick County Sheriff's Office, as required by section 14–411(k) of the Health Occupations Article of the Maryland Code (2005 Repl.Vol.).[1]  The

1.  Section 14–411(k) of the Health Occupation Article states: "If the Board determines that the information contained in a record concerns

investigation led to another patient, Ms. P. She informed the Board that Rudman had inappropriately rubbed his body against her back with what she believed to be his erect penis.[2] A formal complaint was thereafter filed with the Board by Ms. P concerning this conduct.

In December 2005, a criminal information was filed in the Circuit Court for Frederick County, charging Rudman with a total of three counts of second-degree assault and three counts of fourth-degree sexual offense with respect to both Ms. E. and Ms. P. After several newspaper articles appeared asking anyone with information "on the case" to contact the sheriff's office, the Board was notified by that office that nine different people had come forward with complaints about Rudman. Rudman was accused by those individuals of, among other things, "rubbing female patients' breasts, failing to provide female patients privacy when disrobing, touching a female patient's vaginal area on multiple occasions, pressing and/or rubbing his genital area against female patients, and/or initiating undressing of female patients."

Determining that there was probable cause to believe that Rudman was "guilty of immoral or unprofessional conduct in the practice of medicine," in violation of section 14–404(a)(3) of the Health Occupations Article and that this conduct constituted "extraordinary circumstances," the Board, in a written order dated February 9, 2006, suspended Rudman's license to practice medicine pursuant to section 10–226(c)(2) of the State Government Article (2004 Repl.Vol.).[3]

---

possible criminal activity, the Board shall disclose the information to a law enforcement or prosecutorial official."

2. In her complaint, Ms. P stated that, as she had her back to Rudman, she did not see the object that was rubbing against her back but believed it to be Rudman's penis.

3. Section 10–226(c)(2) of the State Government Article provides:
   (2) A unit may order summarily the suspension of a license if the unit:
   (i) finds that the public health, safety, or welfare imperatively requires emergency action; and

Following a subsequent hearing, on February 22, 2006, the Board vacated the suspension of Rudman's medical license subject to the following conditions, which, if violated, would result in a re-imposition of the suspension. Among other things, those conditions required that

(1) Dr. Rudman shall not practice any form of massage on any of his patients; and

(2) Dr. Rudman shall, for each patient encounter with each and every female patient, have a female chaperone in the room, and in such position as the chaperone is able to directly observe the activities, during the entire consultation, examination and treatment. The identity of the chaperone must be documented in the medical record of each patient.

Rudman entered an *Alford* plea[4] to one count of second-degree assault with respect to Ms. P. after the State nolle prossed all of the other charges. That plea was preceded by the following colloquy:

THE COURT: Do you understand you're entering a plea of guilty—an Alfred [sic] plea of guilty, but a plea of guilty nevertheless, to Count One, second-degree assault?

[Rudman]: Yes.

* * *

THE COURT: The event that you're pleading guilty to is alleged to have occurred on February 5th of 2005. Do you understand that?

[Rudman]: Yes.

---

(ii) promptly gives the licensee

   1. written notice of the suspension, the finding, and the reasons that support the finding; and

   2. an opportunity to be heard.

**4.** *See North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) ("An individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

* * *

THE COURT: Now, you're represented by Mr. Winik and Mr. Varner, is that correct?

[Rudman]: Yes.

Q. Have you fully discussed all these matters with both your counsel?

A. Yes, I have, sir.

Q. Have they explained to you the charges pending against you today?

A. Yes.

Q. Have they explained to you the plea agreement?

A. Yes, sir.

Q. And do you understand that this is a plea of guilty, but a special type of plea of guilty known as an Alfred [sic] plea. Do you understand that?

A. Yes, sir.

Q. Have they explained that to you?

A. Yes, sir.

Q. And do you understand the charges?

A. Yes, sir.

Q. The plea agreement?

A. Yes, sir.

Q. And what an Alfred [sic] plea is?

A. Yes, sir.

Q. Mr. Winik, have you explained the charges to Dr. Rudman?

[Winik]: I have.

Q. And the plea agreement?

[Winik]: Yes.

Q. And what an Alfred plea [sic] is?

[Winik]: Indeed I have.

Q. Do you feel that he understands the charges?

[Winik]: Yes.

Q. And the plea agreement?

[Winik]: Yes.

Q. And what an Alfred [sic] plea is?

[Winik]: I do.

Q. Okay. Do you feel that his plea today is his free and voluntary act?

[Winik]: Yes.

THE COURT: Thank you. Dr. Rudman, Count One alleges that you on or about February 5th, 2005, in Frederick County, Maryland, did unlawfully assault [Ms. P.] in the second degree. Do you understand that charge?

[Rudman]: Yes, sir.

Q. Do you understand that you're entering a plea of guilty, an Alfred [sic] plea of guilty, but a plea of guilty nevertheless to that charge?

[Rudman]:[5] Yes, I—I—I deny that this has occurred, but I admit that the State has evidence for a conviction.

THE COURT: Well, let me—do you understand then an Alfred [sic] plea, you are not admitting to me that you did the charge?

[Rudman]: Yes, sir.

Q. You are admitting to me that if this had gone to trial, whether before a jury or before a judge, the State had sufficient evidence—the State does have sufficient evidence to prove the charges beyond a reasonable doubt if a court or jury believed the witnesses. Do you understand that?

[Rudman]: Yes, sir.

Q. And in recognition of that, and what you consider to be a favorable recommendation from the State, you're entering into this plea. Do you understand that?

[Rudman]: Yes, sir.

---

5. The transcript identifies this speaker as the Court, but considering the response given and the colloquy as a whole, we conclude that Rudman was the speaker.

\* \* \*

THE COURT: Now, I've already told you what an Alfred [sic] plea is. Do you understand that? And do you understand that this is a plea of guilty, is that correct?

[Rudman]: Yes, sir.

THE COURT: But you understand that on an Alfred [sic] plea, again, you're not admitting to this charge, but the State does have sufficient evidence, if believed by a jury or by a judge, to prove the charge beyond a reasonable doubt. Do you understand that?

[Rudman]: Yes, sir.

\* \* \*

THE COURT: Do you wish to plead guilty, an Alfred [sic] plea of guilty, but a plea of guilty nevertheless, to Count One, second-degree assault?

[Rudman]: Yes, Your Honor.

At the conclusion of the *Alford* colloquy, the State made the following proffer as to what the evidence would have shown had the case proceeded to trial:

Your Honor, had the State proceeded to trial, we would have called Deputy Tracey McCutcheon from the Frederick County Sheriff's Office, who would testify that she interviewed [Ms. P.] regarding her contact with the defendant, who both Ms. McCutcheon and [Ms. P.] would identify as the same individual seated before you today, Dr. Michael Rudman.

Ms. [P.] would take the stand and state that she had an appointment with Dr. Rudman at the Middletown Family Practice, located at South Church Street in Frederick County; that her appointment was February 5th, 2005, at 12:15 p.m.

She made the appointment for a sinus infection, and her daughter was present, and they went into the examination room together. Ms. [P.] would tell the Court that her vitals

were taken by the nurse on duty, but that she had left the room after taking the vitals.

At that time, Dr. Rudman entered the room, greeted both her and her daughter. She would say he examined her ears, nose and throat regarding the sinus infection. At that time, Ms. [P.] mentioned to the doctor that she had neck pain for three weeks. He asked her to remove her jacket and lay down on the examination table.

He approached her from the top portion of the table and put his hands on her neck and head area. His hands were in Ms. [P.'s] hair, and Ms. [P.] would state that this initially seemed odd. He attempted to elongate her neck by pulling on her head. He then asked her to sit up and asked if her daughter could step outside the examination room.

Ms. [P.] asked her daughter to leave the room, and at that time Dr. Rudman asked Ms. [P.] to sit on the small round stool that was in the room. He stood behind her and flexed and massaged her neck. At first, she thought he was simply brushing up against her back. And this action continued throughout the massage, and she realized that it was his erect penis against her back, approximately in the middle of her back near her bra line.

She tried to move away from him by straightening her back, moving towards the front of the stool. She would testify that she was extremely nervous and could not believe that this was occurring. Eventually he stopped the massaging and the rubbing against her back, and at that time he said that her daughter could re-enter the examination room.

When she—when Ms. [P.] turned around to retrieve the jacket from the chair in the examination room, she would testify that she saw that Dr. Rudman was, indeed, erected at the time. He washed his hands, sat down on the stool, and wrote out a prescription for her sinus infection.

She would testify that she observed some discomfort from Dr. Rudman in sitting down because of his physical state. At that time, she was nervous and wanted to get her daughter and herself out of the examination room. He

finished the prescription. He never stood again. She left the office as quickly as possible.

Her husband, Tony [P.], would testify that approximately 15 minutes after Ms. [P.] left her appointment, he saw her at a rental unit that they own in Frederick City. Ms. [P.] tried to tell her husband what happened, but was crying extremely hard. And Mr. [P.] would testify that he thought she had received some extremely bad news from the doctor's visit. It was about 10 minutes before Ms. [P.] could calm down and explain to him what had occurred on that day.

Ms. [P.] would testify that she changed doctors with her insurance company the next day. All these events occurred in Frederick County, Maryland.

After Rudman's counsel stated "we agree that that would have been [Ms. P.'s] testimony" and Rudman, himself, indicated that he understood what the prosecutor had said, the circuit court accepted Rudman's plea, stating:

Based on Mr. Rudman's answers to my questions, I find this plea of guilty, an Alford plea, but a plea of guilty nevertheless, to Count One, second-degree assault, is freely, voluntarily and understandingly made. There are sufficient facts to enter into the record to prove the allegations of that charge beyond a reasonable doubt, and I do accept this plea of guilty.

The judge then proceeded with sentencing, stating:

Today, on Count One, second-degree assault, I strike the verdict of guilty and grant you probation before judgment under criminal procedure 6–220. You are placed on three years' supervised probation to begin today, to be supervised by Parole and Probation. You are subject to all the standard conditions of probation, court cost of $145 paid to the clerk of the court today; a supervision fee of $40 per month; special condition 22, submit to—I think we'll do it differently. Strike 22. Twenty-eight, no contact with [Ms. P.] and no contact with [Ms. E.]. Thirty-two, continue with your current mental health treatment and any follow-up recom-

mended. And 34, take your medications as prescribed. And also under 34, follow any and all terms, conditions and recommendations of the Maryland Board of Physicians.

* * *

As I say, by accepting this, [Rudman] doesn't even have the right to ask for relief to appeal, which I advised him of. Further, by accepting this, if he violates probation, he's facing the original sentence of 10 years and a $2,500 fine, which that therefore becomes a suspended sentence.

On October 26, 2006, the Office of the Attorney General petitioned the Board to revoke Rudman's license to practice medicine, pursuant to section 14–404(b) of the Health Occupations Article, which provides:

(b) *Crimes involving moral turpitude.*—(1) On the filing of certified docket entries with the Board by the Office of the Attorney General, the Board shall order the suspension of a license if the licensee is convicted of or pleads guilty or nolo contendere with respect to a crime involving moral turpitude, whether or not any appeal or other proceeding is pending to have the conviction or plea set aside.

(2) After completion of the appellate process if the conviction has not been reversed or the plea has not been set aside with respect to a crime involving moral turpitude, the Board shall order the revocation of a license on the certification by the Office of the Attorney General.

The Board issued an order directing Rudman to show cause why his license to practice medicine should not be revoked. Rudman filed an answer and a motion to dismiss, requesting a hearing on both. Without holding the requested hearing, the Board issued a Final Decision and Order dated December 21, 2006, revoking Rudman's license to practice medicine. It declared that it had no discretion but to do so because section 14–404(b) of the Health Occupations Article requires the Board to revoke the license of any physician who has pleaded guilty to or been convicted of a crime of moral turpitude.

In rendering that decision, the Board rejected Rudman's claims that his *Alford* plea was not a guilty plea, that second-degree assault was not a crime of moral turpitude, and that the Board could not "act upon a plea of guilty if the court subsequently enters a disposition of probation before judgment." With respect to his *Alford* plea, the Board, citing *Ward v. State,* 83 Md.App. 474, 478, 575 A.2d 771 (1990), stated that "[a]n *Alford* plea is a guilty plea." It further pointed out that "[t]he circuit court judge repeatedly advised Dr. Rudman ... that an Alford plea is a guilty plea, and Dr. Rudman and his attorney repeatedly acknowledged that they understood this."

In rejecting Rudman's claim that second-degree assault was not a crime of moral turpitude, the Board stated that, "[r]egardless of a crime's status at common law, a crime may be one of moral turpitude for purposes of administrative licensure sanctions if, upon consideration of the actual facts and circumstances of the crime, the licensing board determines that 'public confidence in the administration of government' would be jeopardized by continued licensure." It then concluded that, based on the facts proffered by the State's Attorney, Rudman's crime, which was "committed by and through the use of his medical privileges and during a medical appointment," was "the type that could cast the entire profession into disrepute and destroy public confidence in the government[al] regulation of physicians if not sanctioned" and therefore constituted a crime of moral turpitude. The Board also found little merit to Rudman's claim that the Board may not act upon a guilty plea if a probation before judgment is granted, explaining that it was required to act upon a plea, regardless of the subsequent disposition, unless the guilty plea itself is set aside.

On January 5, 2007, Rudman filed a petition for judicial review in the circuit court. The circuit court vacated the final decision and order of the Board, explaining:

> The Petitioner acknowledges that there was a guilty plea and that it was accepted by the Court in the criminal case brought by the State against him. The Board argues that,

as to this issue, one need go no further after reading and adopting the plain language of the statute. The Probation before Judgment is irrelevant.

But, the Probation before Judgment has the effect of striking, or at least suspending, the guilty plea and rendering it of no force and effect, pending the conclusion of the probationary period. The entry of a judgment is stayed. Upon successful completion of probation, the defendant is discharged, there is no judgment of conviction and there is no conviction for the purpose of any disqualification or disability imposed by law because of conviction of a crime (see Criminal Law Procedure [sic] Article Section 6–220(g)(3)). The Petitioner may then be eligible to have the entire criminal record expunged.

That being the case, the question becomes: What is the status of the guilty plea pending the completion of the probationary period?

The statute (14–404(b)(1)) makes no reference to Probation before Judgment and so the Board argues the legislature is presumed to have considered it and purposely ignored it as being inapplicable. On the other hand, one could argue that all the legislature had to do was say the act applies "whether or not the trial court grants Probation before Judgment" if that was its intent. A close question in this court's view.

I resolve it in favor of the Petitioner. The case law cited by both parties is not dispositive. Since this case involves the denial of a hearing on the merits of the underlying alleged facts, it seems to the undersigned that any ambiguity should be resolved against the denial of a hearing on the disputed facts of this case.

As to the issue of a crime involving moral turpitude, the Board acknowledges that, as a general proposition, Second–Degree Assault does not qualify.

However, the Board argues that the underlying facts alleged at the guilty plea turn the specifics of the Second–Degree Assault charge into a crime of moral turpitude.

The undersigned agrees with that proposition. For a physician to sexually abuse his patient is so outrageous as to require no argument to find moral turpitude.

But, the problem in this case is that these outrageous facts are disputed. At the time they were alleged, the Petitioner denied them. The specific sex crimes were dropped upon the acceptance of a plea to Second–Degree Assault. Without more, Second–Degree Assault would not qualify as a crime of moral turpitude. Since there has never been a hearing on the merits of the alleged facts, the Second–Degree Assault charge should not be considered to be a crime of moral turpitude, absent a hearing on the merits of the charges.

### Standard of Review

Although this case comes to us on appeal from a decision of the circuit court, it is the underlying decision of the Maryland State Board of Physicians that we review. *Maryland Board of Physicians v. Elliott,* 170 Md.App. 369, 400–01, 907 A.2d 321 (2006). We review an agency's decision " 'in the light most favorable to the agency,' since their decisions are *prima facie* correct and carry with them the presumption of validity." *Catonsville Nursing Home, Inc. v. Loveman,* 349 Md. 560, 569, 709 A.2d 749 (1998) (quoting *Anderson v. Department of Pub. Safety & Correctional Servs.,* 330 Md. 187, 213, 623 A.2d 198 (1993); *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 513, 390 A.2d 1119 (1978)). Our role in reviewing the decision of the administrative agency is limited to " 'determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' " *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376 (1999) (quoting *United Parcel Service, Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 577, 650 A.2d 226 (1994)). Moreover, we give considerable weight to the administrative agency's interpretation and application of the statute it administers. *Finucan v. Maryland Board of Physician*

*Quality Assurance,* 380 Md. 577, 590, 846 A.2d 377 (2004) (citing *Lussier v. Md. Racing Comm'n,* 343 Md. 681, 696–97, 684 A.2d 804 (1996) (and cases cited therein)).

## Discussion

### I.

■ The Board contends that the *Alford* plea entered by Rudman was a guilty plea and therefore the suspension of his license was required by section 14–404(b) of the Health Occupations Article. That subsection mandates the suspension of a license to practice medicine when a licensee is (1) convicted of a crime involving moral turpitude; (2) pleads guilty to a crime involving moral turpitude; or (3) pleads nolo contendere with respect to a crime involving moral turpitude. It states:

(b) *Crimes involving moral turpitude.*—(1) On the filing of certified docket entries with the Board by the Office of the Attorney General, the Board shall order the suspension of a license **if the licensee is convicted of or pleads guilty or nolo contendere with respect to a crime involving moral turpitude,** whether or not any appeal or other proceeding is pending to have the conviction or plea set aside.

(2) After completion of the appellate process if the conviction has not been reversed or the plea has not been set aside with respect to a crime involving moral turpitude, the Board shall order the revocation of a license on the certification by the Office of the Attorney General.

(Emphasis added.)

■ An *Alford* plea, under Maryland law, is a guilty plea, albeit a " 'specialized type of guilty plea where the defendant, although pleading guilty, continues to deny his or her guilt, but enters the plea to avoid the threat of greater punishment.' " *Abrams v. State,* 176 Md.App. 600, 603 n. 1, 933 A.2d 887 (2007) (quoting *Ward v. State,* 83 Md.App. 474, 478, 575 A.2d 771 (1990)). Falling, as it does, within the category of a guilty plea, we have no basis to find that Rudman's *Alford* plea did not constitute a guilty plea for purposes of section 14–404(b)(1).

## II.

We turn now to the Board's contention that section 14–404(b) of the Health Occupations Article applied to Rudman notwithstanding his having been placed on probation before judgment. Rudman rejects that contention, claiming that any judgment against him "was stayed by the entry of probation before judgment." He further points out that, if his probationary period is successfully completed, the plea will be expunged and he will not have a judgment of conviction.

Probation before judgment is governed by section 6–220(b) of the Criminal Procedure Article, which states, in part:

(b) *In general.*—(1) When a defendant pleads guilty or nolo contendere or is found guilty of a crime, a court may stay the entering of judgment, defer further proceedings, and place the defendant on probation subject to reasonable conditions if:

(i) the court finds that the best interests of the defendant and the public welfare would be served; and

(ii) the defendant gives written consent after determination of guilt or acceptance of a nolo contendere plea.

Then, section 6–220(e)(1) provides that, "[b]y consenting to and receiving a stay of entering of the judgment as provided by subsections (b) and (c) of this section, the defendant waives the right to appeal at any time from the judgment of guilt." And, finally, section 6–220(g) provides for the discharge of the defendant from probation upon the fulfillment of the conditions of probation and describes the effect of that discharge:

(g) *Effect of fulfillment of conditions of probation.*—(1) On fulfillment of the conditions of probation, the court shall discharge the defendant from probation.

(2) The discharge is a final disposition of the matter.

(2) Discharge of a defendant under this section shall be without judgment of conviction and is not a conviction for the purpose of any disqualification or disability imposed by law because of conviction of a crime.

■ "The probation before judgment statute," as we noted in *Howard County Dept. of Social Services v. Linda J.*, 161 Md.App. 402, 869 A.2d 404 (2005), "plainly requires that a determination of guilt must precede the granting of probation before judgment." *Id.* at 410, 869 A.2d 404 (citing *Board of License Commissioners for Anne Arundel County v. Corridor Wine, Inc.*, 361 Md. 403, 408 n. 4, 761 A.2d 916 (2000)). Linda J. pleaded guilty to one count of second-degree assault for striking her eight-year-old foster daughter with a belt and received a probation before judgment. *Id.* at 404, 869 A.2d 404. The Howard County Department of Social Services found Linda J. responsible for indicated child abuse, which meant that her name would be placed in the agency's central registry of suspected child abusers. *Id.* Linda J. requested a "contested case" hearing to challenge the Department's finding. *Id.* at 404, 869 A.2d 404. Her request was denied by an administrative law judge, pursuant to section 5–706.1 of the Family Law Article of the Maryland Code (2006 Repl.Vol.),[6] but then granted by the circuit court. *Id.* at 404–05, 869 A.2d 404. We reversed, concluding that, despite the fact she had been granted a probation before judgment, she was nonetheless "found guilty" of the offense and therefore was not entitled to a hearing under section 5–706.1 of the Family Law Article. *Id.* at 409–10, 869 A.2d 404. In so ruling, we stated that "in choosing the words 'found guilty' rather than 'convicted'" in the applicable statute, "the legislature must be pre-

---

**6.** Section 5–706.1 of the Family Law Article provides, in relevant part:

(b) *Hearing to appeal finding of indicated abuse or neglect.*—(1) In the case of a finding of indicated abuse or neglect, an individual may request a contested case hearing to appeal the finding in accordance with Title 10, Subtitle 2 of the State Government Article by responding to the notice of the local department in writing within 60 days.

\* \* \*

(3)(i) If a criminal proceeding is pending on charges arising out of the alleged abuse or neglect, the Office of Administrative Hearings shall stay the hearing until a final disposition is made.

(3)(ii) If after final disposition of the criminal charge, the individual requesting the hearing is found guilty of any criminal charge arising out of the alleged abuse or neglect, the Office of Administrative Hearings shall dismiss the administrative appeal.

sumed to have understood and intended one and not the other." *Id.* at 409, 869 A.2d 404 (and cases cited therein). The difference between a conviction [7] and a finding of guilt, we pointed out, is that a conviction is " 'the final judgment and sentence rendered by the court,' " whereas a finding of guilt is the " 'mere determination of guilt.' " *Id.* at 409, 869 A.2d 404 (quoting *Myers v. State*, 303 Md. 639, 645, 496 A.2d 312 (1985)). We reach the same result here for the same reasons.

Furthermore, while we recognize that discharge of a defendant under section 6–220(g) of the Criminal Procedure Article shall be without judgment of conviction and is not a conviction for the purpose of any disqualification or disability imposed by law, the statute under which the Board revoked Rudman's license to practice medicine was triggered, not by a conviction, but by a guilty plea.[8] There is nothing in section 6–220 to suggest that, upon discharge, the guilty plea is nullified.

### III.

We next consider whether second-degree assault may constitute a crime of moral turpitude for professional disciplinary purposes. In entering his *Alford* plea, Rudman pleaded guilty to violating section 3–203 of the Criminal Law Article of the Maryland Code (2002), assault in the second degree, which "involves an intentional, harmful physical con-

---

7. In *Jones v. Baltimore City Police Department*, 326 Md. 480, 606 A.2d 214 (1992), the Court of Appeals examined the meaning of the word "conviction" and pointed out that it may vary according to the context in which it appears. *Id.* at 483–84, 606 A.2d 214 (and cases cited therein). *See also Abrams v. State*, 176 Md.App. 600, 616, 933 A.2d 887 (2007) ("Under *Myers [v. State*, 303 Md. 639, 496 A.2d 312 (1985) ] and its progeny, whether a probation before judgment is a 'conviction' depends upon the context and purpose for which that term is used."). Since the case at hand does not involve disciplinary action based on a conviction, but rather on a guilty plea, cases addressing the meaning of the word "conviction" are not relevant.

8. We do not mean to imply that if Rudman had received probation before judgment on a conviction, rather than a guilty plea, section 14–404(b) of the Health Occupations Article would not have applied. We leave that issue for another day.

tact with the victim that is not legally justified." *Foy v. Giant Food, Inc.*, 298 F.3d 284, 290 (2002) (citing *Cooper v. State*, 128 Md.App. 257, 265, 737 A.2d 613 (1999)). Rudman maintains that, because the definition of the offense does not include unwanted sexual contact, the offense is not one of moral turpitude. It appears that he is relying on the common-law definition of moral turpitude, which focuses on the elements of an offense rather than the facts underlying it.[9]

As it "developed at common law," that "tautological phrase describes a category of offenses, known as infamous crimes, that precluded their perpetrators from testifying." *Stidwell v. Maryland State Board of Chiropractic Examiners*, 144 Md. App. 613, 617, 799 A.2d 444 (2002). Those crimes "were treason, felony, perjury, forgery, and other *crimen falsi* offenses, 'which impressed upon their perpetrator such a moral taint that to permit [the perpetrator] to testify in legal proceedings would injuriously affect the public administration of justice.'" *Id.* (quoting *Garitee v. Bond*, 102 Md. 379, 383, 62 A. 631 (1905)).

But "the term 'moral turpitude' has a more expansive definition in the context of administrative law than at common law," *Oltman v. Maryland State Board of Physicians*, 162 Md.App. 457, 484, 875 A.2d 200 (2005), a point Maryland's appellate courts have repeatedly made and expounded upon. In *Stidwell*, for example, we stated that a crime of moral turpitude has a distinctly different and narrower meaning when invoked in a trial setting for impeachment purposes than it does as a description of prohibitive conduct in the administrative realm, explaining that, "[w]hereas for trials, the expression 'moral turpitude' speaks primarily to truthfulness, for the business of professional licensing and public appointments, the expression strikes the broader chord of public confidence in the administration of government." *Stidwell*, 144 Md.App. at 618–19, 799 A.2d 444.

---

9. In his brief, Rudman states that, "[p]ursuant to the definition of the offense, [assault], that [he] pleaded guilty to, there is no support for the Board's position that this offense is a crime of moral turpitude."

Indeed, in the administrative sphere, the facts and circumstances of a crime may be taken into consideration by an agency in determining whether the offense at issue is a crime of moral turpitude. The Court of Appeals made that clear in *Attorney Grievance Commission of Maryland v. Walman,* 280 Md. 453, 374 A.2d 354 (1977), in deciding whether an attorney's conviction for failing to file a federal income tax return was a crime involving moral turpitude for professional disciplinary purposes. After observing that some courts have "held that every conviction of failure to file is per se an offense involving moral turpitude," the *Walman* Court noted that others, indeed a majority of courts, have held that "failure to file is not a crime involving moral turpitude per se, and that the issue turns on the facts of the particular case." *Id.* at 461, 374 A.2d 354. It then went on to declare: "We think the better view is represented by the cases holding that not every conviction of failure to file is a crime involving moral turpitude, but that the issue depends upon the particular facts of the individual case." *Id.* at 461–62, 374 A.2d 354.

The same point was made by our highest court forty years earlier in *Board of Dental Examiners v. Lazzell,* 172 Md. 314, 191 A. 240 (1937). In that case, the Court of Appeals, in determining whether indecent exposure constituted a crime of moral turpitude for the purpose of revoking Lazzell's dental license, examined the facts underlying Lazzell's convictions for that offense. *Id.* at 322, 191 A. 240. Pointing out that "the answer to which [Lazzell] demurred state[d] facts showing that the exposures were public and intentional," the Court found that it did, while stressing that "moral turpitude is not involved in a charge unless it is intentional or not innocent in its purpose . . . ." *Id.* (citations omitted).

Hence, the particular factual basis that underlay Rudman's guilty plea was clearly relevant to the question of whether he pleaded guilty to a crime of moral turpitude. The Board found that the acts attributed to Rudman constituted a crime of moral turpitude for two reasons: First, "[t]his was an assault with a sexual component, on an unwilling, unaware patient, accomplished under the cover of medical treatment in

a medical office," and, second, it was "a crime of the type that could cast the entire profession into disrepute and destroy public confidence in the government regulation of physicians if not sanctioned. In short, this is a crime of moral turpitude in the opinion of the Board." Given the facts underlying this offense, we cannot quarrel with the Board's finding that, for administrative purposes, the assault in question constituted a crime involving moral turpitude.

## IV.

Finally, we consider whether, in a case arising under section 14–404(b) of the Health Occupations Article, the Board must grant a request for an evidentiary hearing by a respondent who proffers facts and conclusions contrary to the facts set forth in a certified court record.

Section 14–404(b) does not require a hearing. In fact, the Court of Appeals has stated that the purpose of section 14–404(b) is to provide a procedure for an "expedited and summary disposition" by the Board when a charge, as here, rests upon a conviction for or guilty plea to a crime involving moral turpitude. *Maryland Board of Physician Quality Assurance v. Felsenberg,* 351 Md. 288, 303, 718 A.2d 579 (1998). What the Board is required to do is to consider, before acting pursuant to section 14–404(b) in a case involving a guilty plea, at least one of the following:

(i) Stipulated statement of facts or statement of facts on the record;

(ii) Plea agreement containing agreed facts;

(iii) Transcript of plea agreement proceedings; or

(iv) Written or transcribed opinion or statement of the judge accepting the plea.

COMAR 10.32.02.04(C)(1)(b).

While section 10.32.02.04(C)(2) of the Code of Maryland Regulations requires the Board to provide a physician facing action under section 14–404(b) of the Health Occupations Article an opportunity to show cause in writing why the Board

should not take action, this regulation also "makes clear that an evidentiary hearing is discretionary with the [B]oard 'based on the existence of genuine issues of material fact or law.' " *Felsenberg,* 351 Md. at 293, 718 A.2d 579.

In the instant case, the Board relied upon the existing court record, specifically, the recorded proffer made by the State as to the acts committed by Rudman at the time Rudman entered his plea, in determining that Rudman had, during a medical examination, sexually assaulted his patient. As previously noted, the proffer provided more than ample basis for that determination. In fact, appellee does not deny that, if the facts set forth in the proffer were true, he was guilty of a crime of moral turpitude. Moreover, we hardly think that, in enacting section 14–404(b), the legislature intended to permit a doctor, who has pleaded guilty to a crime involving acts of moral turpitude, to be able to later compel the Board to conduct a full-blown administrative hearing so that he could then challenge the factual basis of his plea. That would clearly not be in keeping with the purpose of section 14–404(b), which, as we stated, is to ensure an "expedited and summary disposition" of charges arising from a guilty plea to a crime involving moral turpitude. *Felsenberg,* 351 Md. at 303, 718 A.2d 579. Accordingly, the Board did not abuse its discretion in denying Rudman's request for a hearing.

**JUDGMENT REVERSED; CASE REMANDED WITH INSTRUCTIONS THAT THE CIRCUIT COURT ENTER JUDGMENT IN FAVOR OF THE MARYLAND STATE BOARD OF PHYSICIANS; COSTS TO BE PAID BY APPELLEE.**