994 A.2d 985

**Michael S. RUDMAN**

v.

**MARYLAND STATE BOARD OF PHYSICIANS.**

No. 72, Sept. Term, 2009.

Court of Appeals of Maryland.

May 13, 2010.

Frederick W. Goundry, III (Varner & Goundry, Frederick), on brief, for petitioner.

Thomas W. Keech, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, BARBERA, JJ.

MURPHY, J.

In the Circuit Court for Frederick County, Dr. Michael S. Rudman, Petitioner, (1) was charged with second degree assault and fourth degree sex offense, (2) entered an *Alford* plea of guilty to the crime of second degree assault,[1] and (3) was granted probation before judgment pursuant to § 6–220 of the Criminal Procedure Article. As a result of that disposition, the Maryland State Board of Physicians (the Board), Respondent, concluded that (in the words of its order revoking Petitioner's license), "[s]ince [Petitioner] has pled guilty to a crime of moral turpitude, and no appeal was filed, and the time for filing an appeal has passed, the Board must revoke his license to practice medicine under [Md. Code Ann., Health Occ. (H.O.) ] § 14–404(b)(2)." The Circuit Court "vacated" the revocation, but that decision was reversed by the Court of Special Appeals in *State Board of Physicians v. Rudman,* 185 Md.App. 1, 968 A.2d 606 (2009). Petitioner then filed a "Petition for Writ of Certiorari" in which he presented this Court with the following question:

---

1. In *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the United States Supreme Court held that "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37, 91 S.Ct. at 168. A guilty plea entered by a defendant who asserts his or her innocence has become known as an *Alford* plea.

[Petitioner] entered into an *Alford* plea on one count of second degree assault. The Circuit Court struck the guilty plea and granted [Petitioner] probation before judgment, placing him on supervised probation for three years. Thereafter, the Board revoked [Petitioner]'s license without a hearing. Did the Circuit Court err by vacating the Final Decision and Order of the Board?

We granted the petition. 409 Md. 47, 972 A.2d 861 (2009). For the reasons that follow, we hold that the Board erred in its conclusion that Petitioner's license "must" be revoked on the basis of his guilty plea. We shall therefore reverse the judgment of the Court of Special Appeals.

## Background

Following a criminal investigation that resulted from a complaint made to the Board by one of Petitioner's former patients, Petitioner was charged with six offenses—two against "patient A," and four against "patient B"—in a Criminal Information that included the following assertions:

### COUNT 1–SECOND DEGREE ASSAULT

Patricia McLane, Assistant State's Attorney for Frederick County, Maryland, upon her official oath, does inform the Court that Michael Stephen Rudman, on or about February 5, 2005, at Frederick County, Maryland, did unlawfully assault [patient A] in the second degree; contrary to the form of the Act of Assembly in such cases made and provided and against the peace, government, and dignity of the State. (Criminal Law § 3–203) *CJIS Code: 1 1415*

### COUNT 2–FOURTH DEGREE SEXUAL OFFENSE

And, Patricia McLane, Assistant State's Attorney for Frederick County, Maryland, upon her official oath, does further inform the Court that Michael Stephen Rudman, on or about February 5, 2005, at Frederick County, Maryland, did unlawfully commit a sexual offense in the fourth degree upon [patient A] contrary to the form of the Act of Assem-

bly in such cases made and provided and against the peace, government, and dignity of the State. (Criminal Law § 3–308) *CJIS Code: 4 3600*

On August 16, 2006, Petitioner entered a guilty plea to Count One. The record shows that the following transpired in open court:

[THE PROSECUTOR]: Your Honor, it's my understanding today that the defendant is going to enter an [*Alford*] plea to Count One, second degree assault, on [patient A]. Upon acceptance of the plea and finding of guilt, [the] State will enter a [nolle] prosequi as to the remaining charges.

* * *

THE COURT: ... Dr. Rudman, Count One alleges that you on or about February 5th, 2005, in Frederick County, Maryland did unlawfully assault [patient A] in the second degree. Do you understand that charge?

THE [PETITIONER]: Yes, sir.

THE COURT: Do you understand that you're entering a plea of guilty, an [*Alford*] plea of guilty, but a plea of guilty nevertheless to that charge?

THE [PETITIONER]: Yes, I—I—**I deny that this has occurred, but I admit that the State has evidence for a conviction.**

THE COURT: Well, let me—do you understand that an [*Alford*] plea, **you are not admitting to me that you did the charge?**

THE [PETITIONER]: Yes, sir.

THE COURT: You are admitting to me that if this had gone to trial, whether before a jury or before a judge, the State had sufficient evidence—the State does have sufficient evidence to prove the charges beyond a reasonable doubt **if a court or jury believed the witnesses.** Do you understand that?

THE [PETITIONER]: Yes, sir.

THE COURT: And in recognition of that, and what you consider to be a favorable recommendation from the State, you're entering into this plea. Do you understand that?

THE [PETITIONER]: Yes, sir.

\* \* \*

THE COURT: Do you wish to plead guilty, an [*Alford*] plea of guilty, but a plea of guilty nevertheless, to Count One, second degree assault?

THE [PETITIONER]: Yes, Your Honor.

THE COURT: Have a seat next to [defense counsel] and listen to [the prosecutor].

[THE PROSECUTOR]: Your Honor, had the State proceeded to trial, we would have called Deputy Tracey McCutcheon from the Frederick County Sheriff's Office, who would testify that she interviewed [patient A] regarding her contact with the defendant, who both Ms. McCutcheon and [patient A] would identify as the same individual seated before you today, Dr. Michael Rudman.

[Patient A] would take the stand and state that she had an appointment with Dr. Rudman at the Middletown Family Practice, located at South Church Street in Frederick County; that her appointment was February 5th, 2005, at 12:15 p.m.

She made the appointment for a sinus infection, and her daughter was present, and they went into the examination room together. [patient A] would tell the Court that her vitals were taken by the nurse on duty, but she had left the room after taking the vitals.

At that time, Dr. Rudman entered the room, greeted both her and her daughter. She would say he examined her ears, nose and throat regarding the sinus infection. At that time, [patient A] mentioned to the doctor that she had neck pain for three weeks. He asked her to remove her jacket and lay down on the examination table.

He approached her from the top portion of the table and put his hands on her neck and head area. His hands were

in [patient A's] hair, and [patient A] would state that this initially seemed odd. He attempted to elongate her neck by pulling on her head. He then asked her to sit up and asked if her daughter could step outside the examination room.

[Patient A] asked her daughter to leave the room, and at that time Dr. Rudman asked [patient A] to sit on the small round stool that was in the room. He stood behind her and flexed and massaged her neck. At first, she thought he was simply brushing up against her back. And this action continued throughout the massage, and she realized that it was his erect penis against her back, approximately in the middle of her back near her bra line.

She tried to move away from him by straightening her back, moving towards the front of the stool. She would testify she was extremely nervous and could not believe that this was occurring. Eventually he stopped the massaging and the rubbing against her back, and at that time he said that the daughter could re-enter the examination room.

When she—when [patient A] turned around to retrieve the jacket from the chair in the examination room, she would testify that she saw that Dr. Rudman was, indeed, erected at the time. He washed his hands, sat down on the stool and wrote out a prescription for her sinus infection.

She would testify that she observed some discomfort from Dr. Rudman in sitting down because of his physical state. At that time, she was nervous and wanted to get her daughter and herself out of the examination room. He finished the prescription. He never stood again. She left the office as quickly as possible.

[Patient A's] husband . . . would testify that approximately 15 minutes after [patient A] left her appointment, he saw her at a rental unit that they own in Frederick City. [patient A] tried to tell her husband what happened, but was crying extremely hard. And [patient A's husband] would testify that he thought she had received some extremely bad news from the doctor's visit. It was about 10 minutes before [patient A] could calm down and explain to him what had occurred on that day.

[Patient A] would testify that she changed doctors with her insurance company the next day. All these events occurred in Frederick County, Maryland.

[DEFENSE COUNSEL]: Your Honor, **we agree that that would have been [patient A's] testimony.**

\* \* \*

THE COURT: Based on [Petitioner's] answers to my questions, I find this plea of guilty, an [*Alford*] plea, but a plea of guilty nonetheless, to Count One, second degree assault, is freely, voluntarily and understandingly made. There are sufficient facts to enter into the record to prove the allegations of that charge beyond a reasonable doubt, and I do accept this plea of guilty.

\* \* \*

THE COURT: . . . , I do find that the request for probation before judgment is appropriate.

Today, on Count One, second degree assault, I strike the verdict of guilty and grant you probation before judgment under criminal procedure 6–220. You are placed on three years supervised probation to begin today, to be supervised by Parole and Probation.

(Emphasis supplied).

On October 26, 2006, the Board issued a "SHOW CAUSE ORDER," requiring that Petitioner show cause why his license to practice medicine should not be revoked. This order was issued in response to a "PETITION TO REVOKE THE [PETITIONER'S] MEDICAL LICENSE" that included the following assertions:

11. In assessing whether a crime involves moral turpitude, the Board examines the underlying facts of a particular case. *Bd. of Dental Examiners v. Lazell [Lazzell]*, 172 Md. 314, 320, 191 A. 240 (1937) (noting a crime which, at common law, was not a crime of moral turpitude may nonetheless constitute a crime of moral turpitude when analyzed for purposes of professional discipline). In the

case of *Stidwell v. State Bd. of Chiropractic Examiners*, 144 Md.App. 613, 799 A.2d 444 (2002), the Court of Special Appeals recognized that the term "moral turpitude" has "evolved from its common law trappings into an even more fluid descriptive tool" which "for the business of professional licensing . . . strikes the broader chord of public confidence in the administration of government." *Stidwell,* 144 Md. App. at 618–19, 799 A.2d 444.

12. Likewise, "[t]he Board, in past decisions, has considered the underlying conduct where the criminal offense is not in itself a crime of moral turpitude at common law":

> The case of professional discipline . . . is a different matter [in comparison to the assessment of moral turpitude in an impeachment context]. Here, the Board is mandated to determine whether a licensee is morally fit to practice medicine. This inquiry involves assessing the risk to the public posed by physicians convicted of certain crimes, as well as protecting the integrity of the profession, by insuring that licensees have good moral character. Clearly, the Board must look further than to the mere elements of the crime, and actually examine the physician's underlying conduct, in order to make this determination.

*In the Matter of Keith–Jan Lindemann, M.D.,* MBP Case Number 2005–0481; *In the Matter of Michael Q. Stearns, M.D.,* BPQA Case Number 95–0611; *See also In the Matter of Rosario Guerzon, M.D.,* BPQA Case Number 93–0727.

13. **In the instant case, the [Petitioner] admitted there was sufficient evidence to prove beyond a reasonable doubt that he brushed his erect penis against a patient while massaging her neck.** His conduct took place during the course of the patient's appointment seeking medical care.

14. Unwanted sexual contact with another person is an inexcusable crime for anyone to commit; what is even more disturbing is when it takes place under the guise of a medical examination. The American Medical Association's principles of Medical Ethics define the essentials of a physi-

cian's honorable behavior, including that the physician have "compassion and respect for human dignity and rights," and that he or she ". . . respect the law." AMA Guideline E–0.01 Principles of Medical Ethics.

15. **Based on the totality of the circumstances, the [Petitioner's] unwanted sexual contact with a patient under the guise of a medical examination constitutes a crime of moral turpitude.** Moreover, the time for filing an appeal has expired as more than 30 days have passed since the [Petitioner's] August 16, 2006, plea hearing.

Wherefore, in accordance with the mandate of H.O. § 14–404(b)(2), the Office of the Attorney General prays that the Board enter an Order **REVOKING** the [Petitioner's] license to practice medicine.

(Emphasis supplied).

Petitioner filed an "ANSWER TO PETITION TO RE-VOKE AND MOTION TO DISMISS," and a "REQUEST FOR HEARING" on that motion, in which he presented the following arguments:

The Board's attempt to revoke [Petitioner's] medical license under subsection 14–404(b)(2) must fail, and this Petition be dismissed, because the *Alford* plea entered into by [Petitioner], the alleged trigger for this Petition, is not a final judgment.

\* \* \*

Under Section 14–404(a)(3), the Board could have opted to charge [Petitioner] with "immoral or unprofessional conduct in the practice of medicine" according to the allegations of the Petition. Under that section, [Petitioner] would have been entitled to a hearing. Instead, the Board ignored that provision for the sole purpose of denying [Petitioner] an opportunity to be heard on this issue.

\* \* \*

[Petitioner] entered into an *Alford* plea as to one count of second degree assault on August 16, 2006. In [*Ward v.*

*State*, 83 Md.App. 474, 575 A.2d 771 (1990), the Court of Special Appeals] described an *Alford* plea as "... a specialized type of guilty plea where the defendant, although pleading guilty, continues to deny his or her guilt, but enters the plea to avoid the threat of greater punishment." [*Id.* at 478, 575 A.2d at 772.]

Specifically, during the hearing when the plea was entered into, [Petitioner] stated: "I deny that this has occurred, but I admit the State has evidence for a conviction." The Court then further clarified that [Petitioner] was admitting "the State does have sufficient evidence to prove the charges beyond a reasonable doubt *if a court or jury believed the witnesses.*"

\* \* \*

Second degree assault under Maryland law is defined as an intentional, harmful physical contact with the victim that is not legally justified. *Foy v. Giant Food, Inc.*, 298 F.3d 284 (2002). There is no sexual element involved in this offense, and it is defined as a misdemeanor, pursuant to Md. Code [Criminal Law] Section 3–203(b).... [Petitioner] did not plead guilty to any sexual offense, and vehemently denies that any "unwanted sexual contact" occurred at any time with this patient, or any other patient. Pursuant to the definition of the offense which [Petitioner] pled guilty to, there is no support for the Board's position that this offense is a crime of moral turpitude.

(Emphasis in original).

Without holding a hearing, the Board filed a "FINAL DECISION AND ORDER," in which it rejected Petitioner's arguments, "**Ordered** that the license to practice medicine of [Petitioner], is hereby **revoked**," and responded as follows to Petitioner's argument that his license could not be revoked without a hearing:

[Petitioner] argues that the Board cannot consider as facts the **testimony of the victim** as proffered by the State's Attorney during the plea agreement hearing. The

regulations provide that the transcript of the plea agreement proceeding may be before the Board; in fact, that transcript is on the list of four documents, one of which must be in the administrative record before the Board may issue a show cause order in a case such as this. COMAR 10.32.02.04 C.(1)(b)(iii). The purpose of this regulation is to allow the Board to consider the actual facts of this offense. **In the plea agreement proceeding, [Petitioner] agreed that if the case went to trial the State would produce the victim and that she would testify as to certain facts.** The testimony she would produce if called was set out in the court transcript. Although [Petitioner] now characterizes the victim as an "emotionally disturbed woman," and though he now argues against that testimony, he waived his right to confront this witness, his right to cross-examine this witness and the right to produce any other evidence tending to discredit her testimony or to establish a different factual scenario. He waived his rights in the plea agreement proceeding in return for the dropping of other charges, the avoidance of a trial and the avoidance of the possibility of a much more severe criminal sanction of up to ten years in prison and a fine of up to $2,500. **Having waived all of his rights to confront or question the victim himself or to produce any evidence of his own, [Petitioner] consented to the placement in the official criminal court record of this testimony. [Petitioner] cannot now prevent the Board from considering the only testimony in the official court record of his offense, or from making factual findings based on that testimony. This testimony and these findings are the very thing that the Board is supposed to consider in a criminal case involving one of its professional licensees.**

The Board thus will consider the facts of [Petitioner's] actual crime as revealed in the official court record. The record shows that [Petitioner] committed this crime in his capacity as a physician. He committed it in his medical office, upon a victim who was his patient.

\* \* \*

[Petitioner]'s assault . . . was also committed by and through the use of his medical privileges and during a medical appointment. This is a crime of the type that could cast the entire profession into disrepute and destroy public confidence in the government regulation of physicians if not sanctioned. In short, this is a crime of moral turpitude in the opinion of the Board.

\* \* \*

**Since [Petitioner] has pled guilty to a crime of moral turpitude, and no appeal was filed, and the time for filing an appeal has passed, the Board must revoke his license to practice medicine under Md. Health Occ.Code Ann. § 14–404(b)(2).**

(Emphasis supplied).

Petitioner filed an action for judicial review of the order revoking his license, and that order was "vacated" by the Circuit Court in a "MEMORANDUM OPINION AND ORDER" that included the following findings and conclusions:

As to the issue of a crime involving moral turpitude, the Board acknowledges that, as a general proposition, Second Degree Assault does not qualify.

However, the Board argues that the underlying facts alleged at the guilty plea turn the specifics of the Second Degree Assault charge into a crime of moral turpitude. The undersigned agrees with that proposition. For a physician to sexually abuse his patient is so outrageous as to require no argument to find moral turpitude.

**But, the problem in this case is that these outrageous facts are disputed. At the time they were alleged, the Petitioner denied them. The specific sex crimes were dropped upon the acceptance of a plea to Second Degree Assault. Without more, Second Degree Assault would not qualify as a crime of moral turpitude. Since there has never been a hearing on the merits of the alleged facts, the Second Degree Assault charge should not be**

**considered to be a crime of moral turpitude, absent a hearing on the merits of the charges.**

(Emphasis supplied).

The Board noted an appeal to the Court of Special Appeals (CSA), which reversed the ruling of the Circuit Court and directed that the order revoking Petitioner's license be reinstated. *State Board of Physicians v. Rudman,* 185 Md.App. 1, 24, 968 A.2d 606, 620 (2009). As to Petitioner's argument that his *Alford* plea did not constitute a guilty plea for purposes of H.O. § 14–404(b)(1), the CSA stated:

> An *Alford* plea, under Maryland law, is a guilty plea, albeit a " 'specialized type of guilty plea where the defendant, although pleading guilty, continues to deny his or her guilt, but enters the plea to avoid the threat of greater punishment.' " *Abrams v. State,* 176 Md.App. 600, 603 n. 1, 933 A.2d 887 (2007) (quoting *Ward v. State,* 83 Md.App. 474, 478, 575 A.2d 771 (1990)). Falling, as it does, within the category of a guilty plea, we have no basis to find that Rudman's *Alford* plea did not constitute a guilty plea for purposes of section 14–404(b)(1).

*Id.* at 17, 968 A.2d at 616.

As to Petitioner's argument that his "probation before judgment" disposition did not constitute a "conviction" for purposes of H.O. § 14–404(b)(1), the CSA stated:

> "The probation before judgment statute," as we noted in *Howard County Dept. of Social Services v. Linda J.,* 161 Md.App. 402, 869 A.2d 404 (2005), "plainly requires that a determination of guilt must precede the granting of probation before judgment." *Id.* at 410, 869 A.2d 404 (citing *Board of License Commissioners for Anne Arundel County v. Corridor Wine, Inc.,* 361 Md. 403, 408 n. 4, 761 A.2d 916 (2000)). Linda J. pleaded guilty to one count of second-degree assault for striking her eight-year-old foster daughter with a belt and received a probation before judgment. *Id.* at 404, 869 A.2d 404. The Howard County Department of Social Services found Linda J. responsible for indicated child abuse, which meant that her name would be placed in the agency's central registry of suspected child abusers. *Id.*

Linda J. requested a "contested case" hearing to challenge the Department's finding. *Id.* at 404, 869 A.2d 404. Her request was denied by an administrative law judge, pursuant to section 5–706.1 of the Family Law Article of the Maryland Code (2006 Repl. Vol.), but then granted by the circuit court. *Id.* at 404–05, 869 A.2d 404. We reversed, concluding that, despite the fact she had been granted a probation before judgment, she was nonetheless "found guilty" of the offense and therefore was not entitled to a hearing under section 5–706.1 of the Family Law Article. *Id.* at 409–10, 869 A.2d 404. In so ruling, we stated that "in choosing the words 'found guilty' rather than 'convicted' " in the applicable statute, "the legislature must be presumed to have understood and intended one and not the other." *Id.* at 409, 869 A.2d 404 (and cases cited therein). The difference between a conviction and a finding of guilt, we pointed out, is that a conviction is " 'the final judgment and sentence rendered by the court,' " whereas a finding of guilt is the " 'mere determination of guilt.' " *Id.* at 409, 869 A.2d 404 (quoting *Myers v. State*, 303 Md. 639, 645, 496 A.2d 312 (1985)). We reach the same result here for the same reasons.

*Id.* at 19–20, 968 A.2d at 617–18. (Footnotes omitted).

As to Petitioner's argument that his license could not be revoked without a hearing on the issue of whether he had actually committed a crime of moral turpitude, the CSA stated:

Hence, the particular factual basis that underlay Rudman's guilty plea was clearly relevant to the question of whether he pleaded guilty to a crime of moral turpitude.... Given the facts underlying this offense, we cannot quarrel with the Board's finding that, for administrative purposes, the assault in question constituted a crime involving moral turpitude.

\* \* \*

Section 14–404(b) does not require a hearing. In fact, the Court of Appeals has stated that the purpose of section 14–

404(b) is to provide a procedure for an "expedited and summary disposition" by the Board when a charge, as here, rests upon a conviction for or guilty plea to a crime involving moral turpitude. *Maryland Board of Physician Quality Assurance v. Felsenberg,* 351 Md. 288, 303, 718 A.2d 579 (1998). What the Board is required to do is to consider, before acting pursuant to section 14–404(b) in a case involving a guilty plea, at least one of the following:

(i) Stipulated statement of facts or statement of facts on the record;

(ii) Plea agreement containing agreed facts;

(iii) Transcript of plea agreement proceedings; or

(iv) Written or transcribed opinion or statement of the judge accepting the plea.

COMAR 10.32.02.04(C)(1)(b).

While section 10.32.02.04(C)(2) of the Code of Maryland Regulations requires the Board to provide a physician facing action under section 14–404(b) of the Health Occupations Article an opportunity to show cause in writing why the Board should not take action, this regulation also "makes clear that an evidentiary hearing is discretionary with the [B]oard 'based on the existence of genuine issues of material fact or law.'" *Felsenberg,* 351 Md. at 293, 718 A.2d 579.

In the instant case, the Board relied upon the existing court record, specifically, the recorded proffer made by the State as to the acts committed by Rudman at the time Rudman entered his plea, in determining that Rudman had, during a medical examination, sexually assaulted his patient. As previously noted, the proffer provided more than ample basis for that determination. In fact, appellee does not deny that, if the facts set forth in the proffer were true, he was guilty of a crime of moral turpitude. Moreover, we hardly think that, in enacting section 14–404(b), the legislature intended to permit a doctor, who has pleaded guilty to a crime involving acts of moral turpitude, to be able to later compel the Board to conduct a full-blown administrative

hearing so that he could then challenge the factual basis of his plea. That would clearly not be in keeping with the purpose of section 14–404(b), which, as we stated, is to ensure an "expedited and summary disposition" of charges arising from a guilty plea to a crime involving moral turpitude. *Felsenberg,* 351 Md. at 303[, 718 A.2d at 586]. Accordingly, the Board did not abuse its discretion in denying Rudman's request for a hearing.

*Id.* at 22–24, 968 A.2d at 619–20.

### Discussion

■ The case at bar does not present the questions of whether a hearing is required before the Board can revoke the license of a physician who (1) entered an *Alford* plea to the crime of fourth degree sexual offense, or (2) was found guilty of second degree assault at the conclusion of a guilty plea proceeding during which the physician *admitted* that he or she had actually committed a fourth degree sex offense. The question before us is whether a hearing is required before the Board can revoke the license of a physician who was found guilty of second degree assault at the conclusion of a guilty plea proceeding during which he (1) expressly denied having committed any criminal offense, and (2) through counsel, admitted only that the testimony of the victim—if believed— would be sufficient to convict him of a fourth degree sexual offense.

To answer this question, it might be helpful to hypothesize a case in which the Board has been requested to revoke the license of a physician who (1) was charged with having committed a fourth degree sexual offense while performing a physical examination upon a patient, (2) entered a plea of not guilty to that charge, (3) was acquitted of that charge at the conclusion of a trial during which the patient testified that the physician had committed the sexual offense, but (4) was convicted of the lesser-included offense of second degree assault. Given those facts, under the authority of *Powell v. Maryland Aviation Administration,* 336 Md. 210, 647 A.2d

437 (1994), it is clear that the physician would be entitled to an evidentiary hearing.

In *Powell,* this Court held that a former employee whose employment had been terminated was entitled to a new administrative hearing on the issue of whether he should be disciplined for misconduct. The misconduct was established by proof that the petitioner had been found guilty of telephone misuse at the conclusion of a bench trial that followed his plea of not guilty. The petitioner argued that, because he had been granted probation before judgment in the criminal case, evidence of the guilty finding should have been excluded at his disciplinary hearing. The respondent argued that the guilty finding was entitled to "conclusive effect." This Court rejected both of those arguments, holding "that the guilty finding may be used in the administrative hearing as evidence of the misconduct, but that the guilty finding may not be given conclusive effect." *Id.* at 213, 647 A.2d at 438.

In *Powell,* this Court cited *Mannan v. District of Columbia Bd. of Medicine,* 558 A.2d 329 (D.C.1989) in support of our conclusion that, because the petitioner had been granted probation before judgment, "the principle called nonmutual collateral estoppel or issue preclusion does not apply to bar relitigating the facts underlying the [guilty] finding." *Id.* at 218, 647 A.2d at 441. In that case, the District of Columbia Court of Appeals noted that an *Alford* plea "lies somewhere between a plea of guilty and a plea of *nolo contendere,* where the defendant, while not admitting guilt, agrees not to contest the alleged acts for the purpose of the criminal case only and the judge accepting the plea has no obligation to determine whether there is a strong evidence of actual guilt." *Mannan, supra,* 558 A.2d at 336.

■ When Petitioner entered his *Alford* plea to the crime of second degree assault, the record clearly shows that he (1) never withdrew his plea of not guilty to the sexual offense charge, and (2) expressly denied that he had committed either an assault or a sexual offense. The record also shows that the Circuit Court had no opportunity to evaluate the strength of

the proffered evidence that Petitioner had actually committed a fourth degree sexual offense rather than a second degree assault. The State was entitled to prosecute all of the charges filed against Petitioner, and was not required to enter into the plea agreement that resulted in the State's abandonment of the fourth degree sexual offense charge. The Circuit Court was not required to accept Petitioner's *Alford* plea to the second degree assault charge, and was not required to grant Petitioner a probation before judgment on that charge. Under these circumstances, although we agree with the Court of Special Appeals that there is "no basis to find that [Petitioner's] *Alford* plea did not constitute a guilty plea for purposes of section 14–404(b)(1)," the "conviction" for purposes of that statute is a **second degree assault** conviction.

 While conceding that second degree assault is not a crime of moral turpitude, the Board decided that it "must revoke" Petitioner's license because Petitioner "has pled guilty to a crime of moral turpitude[.]" This decision, however, cannot be based upon a proffer of what patient A would have testified to if she had been called as a witness in the criminal case. If Petitioner had stipulated to the truth of the facts contained in the proffer of patient A's testimony, even though Petitioner was found guilty of second degree assault and thereafter granted probation before judgment in the criminal case, we would hold that the Board was entitled to revoke Petitioner's license without granting his request for a hearing. A stipulation as to testimony, however, is not an admission of fact. As this Court stated in *Bruno v. State,* 332 Md. 673, 632 A.2d 1192 (1993), "when evidence is offered by way of stipulation, there is no agreement as to the facts which the evidence seeks to establish. Such a stipulation goes only to the content of the testimony of a particular witness if he were to appear and testify. The agreement is to what the evidence will be, not to what the facts are." *Id.* at 690, 632 A.2d at 1200 (quoting *Barnes v. State,* 31 Md.App. 25, 35, 354 A.2d 499, 505–506 (1976)).

Under the unique circumstances of the case at bar, as the Circuit Court stated:

[T]he problem in this case is that [the] outrageous facts [alleged against Petitioner] are disputed. At the time they were alleged, the Petitioner denied them. The specific sex crimes were dropped upon the acceptance of [an *Alford*] plea to Second Degree Assault. Without more, Second Degree Assault would not qualify as a crime of moral turpitude. Since there has never been a hearing on the merits of the alleged facts, the Second Degree Assault charge should not be considered to be a crime of moral turpitude, absent a hearing on the merits of the charges.

Because Petitioner has not been found guilty of a crime of moral turpitude, and has never admitted that he has committed any criminal offense, the Board does not have the authority to revoke Petitioner's license without giving him the opportunity for a hearing pursuant to the hearing provisions of H.O. 14–405.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT FOR ENTRY OF A JUDGMENT AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AND REMANDING THIS CASE TO THE MARYLAND STATE BOARD OF PHYSICIANS FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**