799 A.2d 444

**Song Park STIDWELL**

v.

**MARYLAND STATE BOARD OF CHIROPRACTIC EXAMINERS.**

No. 1227, Sept. Term, 2001.

Court of Special Appeals of Maryland.

June 3, 2002.

Robert J. Kim (Brent M. Ahalt and McNamee, Hosea, Jernigan, Kim, Greenan & Walker, P.A., on the brief), Greenbelt, for appellant.

Richard N. Bloom, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., SALMON and SONNER, JJ.

SONNER, J.

The State Board of Chiropractic Examiners denied Song Park Stidwell's request to be certified as a massage therapist because of her conviction for solicitation. The Circuit Court for Howard County affirmed the Board's decision. We defer to the Board's expertise and discretion, as did the court below, and affirm the denial of Stidwell's application.

## I.

On her April 2000 application for certification to practice massage therapy, Stidwell supplied biographical information, her professional training history, and a list of references. Pursuant to question "d" on the form, she also admitted to having been convicted on January 8, 1999, of solicitation for prostitution in Washington D.C. *See* D.C.Code (2001) § 22–2701.

The Board examined Stidwell's application, in line with subtitle 3 of the Maryland Code (1981, 2000 Repl.Vol.), Health Occupations Article. In particular, section 3–5A–09(a)(4) allows the Board to deny an application from one who has been "convicted of or pleads guilty or nolo contendere to a felony or to a crime involving moral turpitude." On June 12, 2000, the Board informed Stidwell that it had denied her application because solicitation was a crime of moral turpitude.

Three months later, on September 8, 2000, the Board amended its decision of denial to include Stidwell's violation of section 3–5A–05(b)(1), which states that, to qualify for certification, the applicant must be "of good moral character." Thus, the Board provided an alternative, though similar, ground for denial that evaded the common law expression "moral turpitude."

Stidwell appeared for a hearing before the Board, to no avail. She then petitioned for judicial review in the Circuit Court for Howard County, which affirmed the conclusion of

the Board that solicitation was a crime of moral turpitude, but did not address the alternative ground upon which Stidwell's application was denied.

## II.

The Board falls within the purview of the Administrative Procedure Act, which subjects its decisions to the substantial evidence standard of review. *See* Md.Code (1984, 1999 Repl. Vol.), State Gov't § 10–222. That means we will uphold the Board's factual conclusions if "a reasoning mind reasonably could have reached" them. *Bd. of Physician Quality Assurance v. Banks*, 354 Md. 59, 68, 729 A.2d 376 (1999) (citations omitted). We also afford "a degree of deference" to the Board's legal conclusions, upon the premise that "the expertise of the agency in its own field should be respected." *Id.* at 69, 729 A.2d 376.

Given our deferential review, it seems to us the Board reasonably concluded that the fresh conviction belied a "good moral character." That conclusion rendered Stidwell unqualified for certification, pursuant to section 3–5A–05(b)(1), and, accordingly, the Board denied her application. We recognize that the Board added the "good moral character" ground for dismissal after the "crime involving moral turpitude" ground, but Stidwell has not alleged, nor do we find, that that fact is fatal to the Board's case.

## III.

Having upheld the Board's decision on the "good moral character" criteria, we nevertheless tackle the heady question of whether solicitation is indeed a crime involving moral turpitude. *See McNeil v. State*, 356 Md. 396, 423–25, 739 A.2d 80 (1999) (Raker, J., concurring) (commenting on prostitution's complex history and sociology). The parties devote much of their briefs to the subject of moral turpitude, and we believe it worthwhile to emphasize that the phrase is chamaeleon-like, adopting different shades of meaning in different legal contexts.

The expression "moral turpitude" developed at common law. *See Matthews v. State,* 68 Md.App. 282, 295–97, 511 A.2d 548 (1986) (discussing early definitions of moral turpitude). The tautological phrase describes a category of offenses, known as infamous crimes, that precluded their perpetrators from testifying. *Prout v. State,* 311 Md. 348, 362–63, 535 A.2d 445 (1988); *Bd. of Dental Exam'rs v. Lazzell,* 172 Md. 314, 320, 191 A. 240 (1937). Thus, "moral turpitude" itself does not refer to any distinct set of crimes. *Prout,* 311 Md. at 363, 535 A.2d 445. The infamous crimes, however, were treason, felony, perjury, forgery, and other *crimen falsi* offenses, "which impressed upon their perpetrator such a moral taint that to permit [the perpetrator] to testify in legal proceedings would injuriously affect the public administration of justice." *Garitee v. Bond,* 102 Md. 379, 383, 62 A. 631 (1905).

In 1864, Maryland abrogated, by statute, the disqualification rule for convicts of infamous crimes, while simultaneously providing for the impeachment of such persons with the admission of their convictions at trial. *Jackson v. State,* 340 Md. 705, 712, 668 A.2d 8 (1995); *Prout,* 311 Md. at 359, 535 A.2d 445. For more than one hundred years, Maryland continued to treat infamous crimes differently from other offenses for purposes of impeachment.[1] This is not to say, however, that only infamous crimes, as understood at common law, were used to attack credibility. Rather, non-infamous crimes, i.e., "lesser crimes," became tools of impeachment at the court's discretion, depending on whether they "reflect[ed] on one's tendency to be truthful," were recent enough to be relevant, and were more probative than prejudicial. *Prout,* 311 Md. at 363, 535 A.2d 445; *Carter v. State,* 80 Md.App. 686, 692, 566 A.2d 131 (1989).

---

1. Since 1992, with the advent of Maryland Rule 1–502, now Rule 5–609, evidence of either an infamous crime or a lesser crime can be admitted only upon a court's determination that its probative value outweighs "the danger of unfair prejudice." *See Beales v. State,* 329 Md. 263, 619 A.2d 105 (1993) (discussing the change in law from *Prout* to Maryland Rule 1–502).

In *Carter*, 80 Md.App. at 693, 566 A.2d 131, this Court held that a conviction for the non-infamous crime of drug manufacturing touched upon the witness's veracity and was admissible for impeachment. On the other hand, in *Ricketts v. State*, 291 Md. 701, 713–14, 436 A.2d 906 (1981), the non-infamous crime of indecent exposure was held not to correlate with truthfulness, so as to permit its introduction for impeachment. Likewise, in *Prout*, 311 Md. at 365, 535 A.2d 445, the use of non-infamous crimes of solicitation and prostitution were precluded for impeachment purposes. *See also Matthews v. State*, 68 Md.App. 282, 300, 511 A.2d 548 (1986).

Stidwell would benefit if our analysis ended with these criminal cases, particularly *Prout* and *Matthews*. Her conviction, however, surfaced in the field of administrative law, where "moral turpitude" has evolved from its common law trappings into an even more fluid descriptive tool. Indeed, while Maryland's administrative and regulatory statutes repeatedly use the phrase "moral turpitude," that use is variable and inconsistent.[2] Our review of theses statutory provisions reveals that, whereas for trials, the expression "moral turpitude" speaks primarily to truthfulness, for the business of

---

2. *See, e.g.*, Md.Code (1973, 1999 Repl.Vol.), Agric. § 2–403(1) (members of the Board of Review of the Department of Agriculture may be removed upon a "[c]onviction of a crime involving moral turpitude, or any criminal offense the effect of which is to prevent or interfere with the performance of Board duties"); Md.Code (1992, 1998 Repl.Vol., 2001 Supp.), Bus. Reg. § 16–210(a)(6)(ii) (cigarette business license may be denied for an applicant who has been convicted of "a misdemeanor that is a crime of moral turpitude and is directly related to the fitness and qualification of the applicant"); Md.Code (1995, 1997 Repl.Vol., 2001 Supp.), Ins. § 10–126(a)(8) (insurance agent applicant may be denied if applicant "has been convicted by final judgment in any state or federal court of a crime involving moral turpitude"); Md.Code (1984, 1999 Repl.Vol., 2001 Supp.), State Gov't § 8–502 (member of a State board or commission can be suspended without pay if the person is convicted of a crime that "is a misdemeanor related to the member's public duties and responsibilities and involves moral turpitude for which the penalty may be incarceration in a penal institution"); Md.Code (1977, 1999 Repl.Vol.), Transp. II. § 15–315(a)(1) (car dealer applicant may be denied a license if the applicant "is untrustworthy, lacks competence, or has been convicted by final judgment in any court of a crime of moral turpitude").

professional licensing and public appointments, the expression strikes the broader chord of public confidence in the administration of government. That is, a person who has credibility to testify may not have the public's confidence to practice certain professions or to serve on a governmental board.

The best examples of this interplay are *Lazzell*, 172 Md. 314, 191 A. 240, and *Ricketts*, 291 Md. 701, 436 A.2d 906. In *Lazzell*, the Court of Appeals upheld an administrative board's decision to revoke a dentist's license after he acquired a series of convictions for indecent exposure. The Court reviewed various applications of "moral turpitude" in the civil context, and concluded that the dentist's conduct met the standard of turpitude, being "base, vile, and shameful." *Lazzell*, at 321, 191 A. 240. Fifty years later, in *Ricketts*, the Court did not repeat that conclusion while reviewing the same offense in the context of a criminal trial. The Court explained:

> The first and most fundamental distinction we note between *Lazzell* and the case at bar is that the Court in *Lazzell* was assessing the propriety of a licensing board's determinations whereas here we are concerned with the cross-examination of a defendant in a criminal trial. In *Lazzell* the question was whether a dentist had violated the ethical standards of his profession. In the case *sub judice* the question is whether the conviction was relevant to an assessment of credibility of a criminal defendant. Therefore, the light under which the conviction is examined, as well as the effect it would produce on the examiners is drastically different.

*Ricketts*, 291 Md. at 712, 436 A.2d 906.

Accordingly, the holdings of *Prout* and *Matthews* offer Stidwell little refuge. She may be qualified to give testimony, or to be certified in another profession, but in the particularly intimate setting of a massage parlor, her prurient offense casts an unsavory, even menacing, shadow.

**JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.**