*Comptroller of the Treasury v. Two Farms, Inc.*
Case No. 944, September Term, 2016

**HEADNOTES**

## COURTS -- JURISDICTION -- MOOTNESS

Even though the cigarette retail license suspended by the Comptroller may have expired or may have been renewed, this case is not moot because the Comptroller could use that suspension against the licensee in future proceedings, e.g., license renewal.

## STATUTORY CONSTRUCTION

A court should give effect to all of the language in a statute and avoid a construction that renders any part superfluous -- A court is free to explore what is below the surface of the statute yet fairly part of it -- A subsequent amendment to a statute is not controlling as to the meaning of the prior law, but can be considered helpful to determining legislative intent -- There can be no easy reliance on a rejected amendment where there are other reasons for defeat of the measure -- Statutes on the same subject are construed together -- The canon *expressio unius est exclusio alterius* (The expression of one is the exclusion of the other) should be used with extreme caution so that it is not applied to override the intention of the Legislature.

## TOBACCO REGULATION ADMINISTRATIVE LAW & PROCEDURE -- LICENSES -- AGENCY POWERS

A State licensing agency has an implied power to suspend or revoke a license for a "fundamental" reason, such as when a licensee acts outside the scope of its license.

## TOBACCO REGULATION

The Comptroller has the implied power -- legislatively recognized -- to suspend a cigarette retail licensee for unlawful sales of tobacco products to a minor, because the retailer is acting outside the scope of its license.

## TOBACCO REGULATION

The Comptroller's authority to suspend a cigarette retail license is not derived from BR Article § 16-210(a)(2), which authorizes discipline of a licensee that "fraudulently or deceptively uses a license."

## LICENSES

Fraudulent or deceptive use of a State license is not confined to common law fraud and does not require that someone be actually misled.

## ADMINISTRATIVE LAW AND PROCEDURE -- JUDICIAL REVIEW

A court may not uphold an agency decision on any basis other than the findings or reasoning stated by the agency.

Circuit Court for Baltimore County
Case No. 09-C-16-000258

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 944

September Term, 2016

_____

COMPTROLLER OF THE TREASURY

v.

TWO FARMS, INC.

_____

Meredith,
Beachley,
Zarnoch, Robert A.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Zarnoch, J.

_____

Filed:  November 29, 2017

This appeal raises two overlapping issues: 1) whether the Comptroller of the Treasury has the authority to suspend the cigarette retail license of a business that illegally sells tobacco products to a minor; and 2) whether the Comptroller possesses such power under Md. Code (1992, 2015 Repl. Vol.), Business Regulation ("BR") Article, § 16-210(a)(2), which authorizes discipline of a licensee that "fraudulently or deceptively uses a license." For reasons that follow, we conclude that the Comptroller has implied power --legislatively-recognized -- to suspend a license for unlawful sales of tobacco products to a minor. Under these circumstances, the licensee is acting outside the scope of the license conferred by Title 16 of the BR Article. However, the authority to suspend is not derived from BR § 16-210(a)(2). Because the administrative adjudication here was premised on the latter provision, the Circuit Court for Baltimore County correctly held that the suspension in this case cannot stand.

## BACKGROUND

Two Farms is the operator of retail chain stores that are licensed to sell, among other things, cigarettes and tobacco products. On May 20, 2015, the Baltimore County Department of Health (the "Department") warned Two Farms about making sales to minors and not asking for identification in violation of local ordinances.[1]

---

[1]     Section 13-12-103 of the Baltimore County Code states:

> (a) An owner may not distribute to a minor: (1) Any tobacco product; (2) Tobacco paraphernalia; or (3) A coupon redeemable for a tobacco product.

In August 2015, the Department cited Two Farms for selling tobacco to minors on three separate occasions. All three violations occurred at the same location. On August 6, 2015, a minor purchased a Black and Mild cigar. On August 10, 2015, a minor bought a tin of chewing tobacco and was not asked for identification. On August 11, 2015, a minor

(b) A person other than an owner may not: (1) Buy for or sell any tobacco product to a minor; or (2) Distribute tobacco paraphernalia to a minor.

(c) A violation of this section has not occurred if the owner or other distributor: (1) Examined the purchaser's or recipient's drivers license or another valid identification issued by a government entity or institution of higher education; and (2) That license or other identification positively identified the purchaser or recipient of a tobacco product as at least 18 years of age.

Section 13-12-103.1 provides:

(a) Each owner or other distributor shall verify by means of photographic identification containing the bearer's date of birth that no person purchasing a tobacco product or tobacco paraphernalia is a minor.

(b) No such verification is required for any person over the age of 26.

(c) Proof that the owner or other distributor demanded, was shown, and reasonably relied upon proof of age shall be a defense to any action brought under this section.

(d) An owner or other distributor is not required to verify the age of the individual purchasing the tobacco product if the owner or other distributor has personal knowledge, whether from personal acquaintance or from a previous demand for verification of age, that the purchaser is not a minor.

2

purchased a Black and Mild cigar from the retailer.  In each instance, a Department officer brought the minor to the store to attempt to purchase tobacco.  Each time, Two Farms was issued a citation proposing a civil penalty for selling tobacco to a minor and, in one instance, for failing to ask for identification in violation of § 13-12-103.1 of the Baltimore County Code.  These citations were adjudicated at a hearing before a county administrative law judge -- a hearing that Two Farms did not attend.  The retailer was found liable and civil penalties were imposed.

The County Department notified the Comptroller about Two Farms's violations. On November 2, 2015, the Comptroller sent the retailer a Notice of Hearing directing the licensee to show cause why its license should not be suspended for violations of BR § 16-210(a)(2). On November 19, 2015, a hearing was held at the Comptroller's office.  Two officials from the County Department appeared as witnesses; however, Two Farms did not attend.  One of the Department's witnesses testified to the events described at the County adjudicative hearing.  At that point, the hearing officer issued his ruling, finding:

> Well, in light of the fact that [Two Farms] has failed to appear, the evidence is sufficient to substantiate a finding here of guilty, and as a result, since the Comptroller has the authority to impose a suspension or revocation of a license, this is a first offense for [Two Farms] on the State level, so they will be suspended for a period of ten days and their cigarette and tobacco licenses will be suspended for a period of ten days.

On December 10, 2015, the Comptroller sent Two Farms a Notice of Final Determination, informing the business that its license to sell tobacco products would be

suspended for ten days, pursuant to BR § 16-210(a)(2) for "fraudulently or deceptively us[ing] a license."[2]

On January 7, 2016, Two Farms sought judicial review of the Comptroller's decision in the Circuit Court for Baltimore County. At a June 10, 2016 hearing, the business claimed that it was not aware of the proceeding before the Comptroller's office because the citations had been served on store employees, and not on the company.[3] Two Farms argued that there was no evidence of fraudulent or deceptive use of a tobacco license, as required under BR § 16-210(a)(2). The retailer asserted that the minors were not being deceived when they bought the tobacco products. The Comptroller countered that an unlawful action in and of itself proves fraud or deceit. The circuit court observed that there was no evidence of any misrepresentations made by the store. At the conclusion of the hearing, the court found that the evidence did not show a fraudulent or deceptive use of the license and vacated the order suspending Two Farms's license. The Comptroller appealed from that decision.[4]

---

[2]    The Comptroller's hearing officer did not explain how the illegal tobacco sales were in fact fraudulent or deceptive.

[3]    At oral argument, counsel for Two Farms stated that the employees probably just threw the citations away so that they would not get into trouble for selling to a minor.

[4]    We note that BR § 16-207(a) provides that "[u]nless a license is renewed for a one-year term as provided in this section, the license expires on the first April 30 after its effective date" and that BR § 16-304 states that "[a] county license expires on the first anniversary of its effective date." In light of these provisions, it is likely that the license, which is the subject of the suspension in this case, has expired and may have been renewed. Nevertheless, we believe this case is not moot, because in the future, the Comptroller could use the existence of Two Farms's unlawful sales to minors against the retailer in future proceedings, *see Thana v. Bd. of License Comm'r for Charles Cnty.*, 226 Md. App. 555,

4

The Comptroller frames the issue in this case as whether there was "substantial evidence that Two Farms fraudulently or deceptively used its license."[5]  However, in our view, this is not a substantial evidence case, but one presenting a purely legal issue of statutory interpretation—a question that we review *de novo*.  *Matthews v. Hous. Auth. of Baltimore Cty.*, 216 Md. App. 572, 582 (2014).

## DISCUSSION

### 1.  Introduction

The facts in the instant case are not complicated.  Two Farms received three citations for selling tobacco products to minors.  Based on that evidence, the Comptroller suspended Two Farms's license to sell tobacco products for ten days.  In his order, the Comptroller stated that the license was being suspended pursuant to BR § 16-210(a)(2) for "fraudulently or deceptively use[ing] a license."[6]  Two Farms challenged that finding and the circuit court

---

568 (2016), most notably in the Comptroller's consideration of a license renewal.  *See* BR § 16-207(c)(1) and § 16-210(d).

[5]  Two Farms presents the issue in the following terms:

> Where BR § 16-210(a)(2) authorizes the Comptroller to suspend a tobacco license if the licensee "fraudulently or deceptively uses a license," did the Circuit Court correctly rule in favor of a licensee who unwittingly sold tobacco to a minor, where the Comptroller admitted that there was no evidence of fraud or deceit?

[6]  In this case, the retailer sold cigars and chewing tobacco -- actions which would appear to be governed by Title 16-5 of the BR Article.  That Title regulates licensees for "other tobacco products."  Yet, the parties have treated this case as one involving the suspension

agreed, ruling that the facts did not support a fraudulent or deceptive use of the license. Therefore, the primary issue we must decide is whether the act of selling tobacco products to a minor constitutes a fraudulent or deceptive use of a license to sell tobacco products. However, given the Comptroller's reliance on BR § 16-212(e)(1)'s purported recognition of the power to suspend or revoke a license for illegal sales of tobacco, we also consider whether Title 16 or any part of it supports such authority.

BR § 16-210(a) provides grounds upon which the Comptroller can suspend or revoke a license. Specifically, the Comptroller can suspend or revoke a license if the licensee:

(1)     fraudulently or deceptively obtains or attempts to obtain a license for the applicant or licensee or for another person;

(2)     **fraudulently or deceptively uses a license**;

(3)     fails to comply with the Maryland Cigarette Sales Below Cost Act or regulations adopted under that Act;

(4)     fails to comply with the provisions of Title 11, Subtitle 5A of the Commercial Law Article;

(5)     buys cigarettes for resale:

> (i) in violation of a license; or
>
> (ii) from a person who is not a licensed cigarette manufacturer, licensed subwholesaler, licensed vending machine operator, or licensed wholesaler;

(6)     is convicted, under the laws of the United States or of any other state, of:

> (i)     a felony; or
>
> (ii)     a misdemeanor that is a crime of moral turpitude and is directly related to the fitness

---

of a "cigarette" license under Title 16. Given our resolution of this appeal, we need not address this anomaly.

and qualification of the applicant or licensee; or

(7)        has not paid a tax due before October 1 of the year after the tax became due.

BR § 16-210(a) (Emphasis added).[7]

Furthermore, BR § 16-212(e)(1) provides that "**Except for a violation of § 10-107 of the Criminal Law Article**,[8] whenever any license issued under the provisions of this

---

[7]        Section 16-210(b) also provides:

> Subject to the hearing provisions of § 16-211 of this subtitle, the Comptroller may suspend or revoke a license if the licensee violates:  (1)    Title 12 of the Tax – General Article, or regulations adopted under that title; or (2)    this title or regulations adopted under this title.

[8] Section 10-107 of the Criminal Law Article (CL) (2002, 2016 Repl. Vol.) provides:

> (a) This section does not apply to the distribution of a coupon that is redeemable for a tobacco product, if the coupon is: (1) contained in a newspaper, magazine, or other type of publication in which the coupon is incidental to the primary purpose of the publication; or (2) sent through the mail.
>
> (b) (1) This subsection does not apply to the distribution of a tobacco product or tobacco paraphernalia to a minor who is acting solely as the agent of the minor's employer if the employer distributes tobacco products or tobacco paraphernalia for commercial purposes. (2) A person who distributes tobacco products for commercial purposes, including a person licensed under Title 16 of the Business Regulation Article, may not distribute to a minor: (i) a tobacco product; (ii) tobacco paraphernalia; or (iii) a coupon redeemable for a tobacco product.
>
> (c) A person not described in subsection (b)(2) of this section may not: (1) purchase for or sell a tobacco product

7

subtitle is suspended or revoked by the Comptroller, the licensee may, before the effective date of the suspension or revocation, petition the Comptroller for permission to make an offer of compromise consisting of a sum of money in lieu of serving the suspension or revocation." (Emphasis added).

The Comptroller argues that the language of BR § 16-212(e)(1) makes it clear that he can suspend or revoke a license when a licensee distributes tobacco products to a minor.[9] According to the Comptroller, the only paragraph this could fall under is BR § 16-210(a)(2); therefore, a licensee's unlawful distribution of tobacco to a minor constitutes a

---

to a minor; or (2) distribute tobacco paraphernalia to a minor.

(d) In a prosecution for a violation of this section, it is a defense that the defendant examined the purchaser's or recipient's driver's license or other valid identification issued by an employer, government unit, or institution of higher education that positively identified the purchaser or recipient as at least 18 years of age.

(e) (1) A person who violates this section is guilty of a misdemeanor and on conviction is subject to a fine not exceeding: (i) $300 for a first violation; (ii) $1,000 for a second violation occurring within 2 years after the first violation; and (iii) $3,000 for each subsequent violation occurring within 2 years after the preceding violation. (2) Enforcement of a civil penalty for a violation of this section precludes a prosecution for a violation of § 10-107 of the Criminal Law Article arising out of the same violation.

(f) For purposes of this section, each separate incident at a different time and occasion is a violation.

[9]    Even though this case involves the civil violation of local ordinances, not a state criminal prosecution under CL § 10-107, the assumption of the Comptroller is that both involve illegal sales of tobacco products to minors and, if the latter is covered by BR § 16-210(a)(2), so would the former.

deceptive or fraudulent use of that license subject to discipline under BR § 16-210(a)(2). Two Farms argues that a suspension for violating CL § 10-107 is authorized under BR § 16-210(a)(6)(ii), which allows the Comptroller to suspend or revoke a license when the licensee is convicted of certain misdemeanors that are crimes of moral turpitude. The retailer also contends that simply selling a tobacco product to a minor is not a deceptive or fraudulent act by itself. Two Farms also argues that there must be some fraudulent scheme involved in the sale to a minor in order for BR § 16-210(a)(2) to apply. In addition, the business points to the failure of 2015 legislation, which among other things, would have expressly authorized the Comptroller to suspend or revoke a license for illegal sales to minors; and argues that this demonstrates a legislative intent to deny the Comptroller this authority.

## 2. Relevant Principles of Statutory Construction

In addition to the text, the purpose and legislative history of the relevant statutes and the consequences of the proffered constructions are critical to resolving these contentions. Also, of special importance here are three precepts of statutory construction. The first is when interpreting a statute, we should "give effect to all of the language and avoid a construction that renders any portion superfluous." *Alston v. State*, 433 Md. 275, 283 (2013) (quoting *Stanley v. State*, 390 Md. 175, 183-84 (2005)). Second, although a court is not authorized to ignore the text, it is free to explore "what is below the surface of the statute and yet fairly part of it." Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 533 (1947). Finally, of particular relevance to the Comptroller's arguments, is the principle that "a subsequent legislative amendment of a

9

statute is not controlling as to the meaning of the prior law [but] . . . can be considered helpful to determine legislative intent." *Chesek v. Jones*, 406 Md. 446, 462 (2008).

### 3. History and Purpose of the Relevant Statutes

We focus on the relationship between three provisions: (1) CL § 10-107; (2) BR § 16-210(a); and (3) BR § 16-212(e)(1).[10] CL § 10-107 began life as Chapter 371, Laws of 1886, which according to its title, was designed "to protect the health and morals of minors in the State of Maryland." More than a century later, Judge Rodowsky, in his dissenting opinion in *Allied Vending, Inc. v. Cty. of Bowie*, 332 Md. 279 (1993) described this criminal statute as creating a "class of ineligible purchasers." *Id.* at 327.[11] In a 1994 enactment, the General Assembly reinforced this conclusion by prohibiting a minor from possessing any tobacco product. CL § 10-108. Chapter 110, Laws of 1994. This statute also expressly subjected "persons licensed under Title 16 of the Business Regulation Article" to its prohibitions. CL § 10-107(b)(2).[12] As introduced, the legislation would have mandated a

---

[10] We will discuss only those amendments to the statutes that are relevant to this case.

[11] The dissent disagreed with the majority's conclusion that the comprehensiveness of state laws regulating cigarette vending machines preempted local ordinances governing their placement.

[12] Under the federal Synar Amendment, 42 U.S.C. § 300x-26, as a condition of receiving certain substance abuse grants from the federal government, Maryland must have a law that prohibits the sale of tobacco products to minors. CL § 10-107 is that law. In addition, the Synar Amendment requires the states to enforce their laws on the sale of tobacco products to minors in a matter that can reasonably be expected to reduce availability and to annually conduct random, unannounced inspections to ensure compliance with those laws. *See* 42 U.S.C. §300x-26(b).

10

license suspension for businesses convicted of violating § 10-107. That language was deleted from the bill.

The licensing provisions of Title 16 are almost as old as CL § 10-107. They became law in 1890. Chapter 91, Laws of 1890. This statute was two sentences long: the first required a trader's license to sell tobacco to be obtained from the clerk of the circuit court for each county and Baltimore City; the second directed an applicant for a license to state under oath that cigarettes sold "contain no injurious drug." The latter requirement was deleted six years later. Chapter 439, Laws of 1896. If such a provision had remained in the law, in light of our present knowledge of the harmful effects of smoking, no retailer could have taken such an oath, and the sale of tobacco products would have been outlawed.

The licensing provisions remained skeletal, even after the Comptroller was made an administrator/enforcer of the law and a few grounds were added as a basis for suspension or revocation, such as selling cigarettes below cost and unlawfully buying cigarettes for resale. Most significantly, in the 1988 non-substantive code revision of the Tax -- General Article, Chapter 2, Laws of 1988, fraudulent or deceptive use of the license was added as a ground for suspension or revocation.[13] The Revisor's Note for the change noted:

> Subsection (a)(1) and (2) of this section is new language added to conform to almost all of the occupational licensing acts adopted by the General Assembly in the past several years. See, e.g., the comparable sections on disciplinary actions in the various titles of the Health Occupations Article. The General Assembly expressly decided that the language of these items

---

[13] So too was fraudulent or deceptive obtaining of a license. These provisions were included in old Article 56 in anticipation of incorporating them into a Business Regulation article.

11

was to be included in each of those sections as a *fundamental ground* for disciplining a licensee.

(Emphasis added).

The Revisor's Note is consistent with the Commission to Revise the Annotated Code of Maryland's Model Guide for Drafting Board, Commission, and Licensing Provisions (Jan. 1979). That Guide states that "in most instances there must be source law provisions in each subtitle to support the adoption of the uniform language . . . ." *Id.* at 1. The Guide goes on to note:

> However, the [Guide] does propose in certain sections the adoption of uniform provisions even if the source law of a given statute does not expressly support the provision. The proposals are made only when the additional language does nothing more than state a provision that is *inherent or fundamental* to the scheme of things for all of the regulatory boards with which we are concerned.

*Id.*[14] (Emphasis added).

In 1992, the tobacco licensing provisions were moved to the new Business Regulations Article. Chapter 4, Laws of 1992. Subtitle 1 of Title 16 of the new article contains definitions, most notably § 16-101(e), which defines "Sell cigarettes at retail" as selling cigarettes "to a consumer." Subtitle 2 regulates a host of tobacco business licenses; some of the provisions apply to retailers, some do not. An anomaly of the code revision organization of Title 16 is that there are two separate provisions governing the suspension

---

[14]  It would appear that the first regulatory statute to include "fraudulent or deceptive use" of a license as a ground for discipline was the Medical Practice statute. That occurred in 1968. Chapter 469, Laws of 1968. Now, as a result of code revision, 57 licensing statutes list this misconduct as a ground for discipline.

or revocation of a retailer's license; BR § 16-210 and BR § 16-306.[15]  Section 16-210 -- the more expansive of the two -- seems to have been the "go-to" statute for subsequent amendments.  *See Sanchez v. Potomac Abatement, Inc.*, 198 Md. App. 436, 449 (2011), *aff'd*, 424 Md. 701 (2012) (discussing this legislative phenomenon).

We now fast-forward to 1994 -- the same year the General Assembly made major changes to CL § 10-107.  The Legislature passed Chapter 464, Laws of 1994, a departmental bill that augmented the Comptroller's authority over tobacco licensees.  One significant change provided that the Comptroller could suspend or revoke a license if the licensee violates "Title 16 of the Business Regulation Article or regulations adopted under that title."  *See* BR § 16-210(b)(2).  A more controversial addition authorized a licensee facing suspension or revocation of its license to petition the Comptroller to permit a monetary offer of compromise.  Anti-tobacco advocates opposed this provision.  *See* Written Testimony of the Maryland Coalition to Stop Illegal Sales of Tobacco to Minors ("If illegal sales make money, why would the seller stop selling to children even with a fine?") (Mar. 25, 1994).  To head-off this attack, the Governor's Legislative Office and the Comptroller offered an amendment that exempted violations of CL § 10-107 from the Comptroller's proposed compromise authority.[16]  The amendment was adopted and the legislation passed.  The compromise authority was codified as BR § 16-212(e)(1).

---

[15]    One reason for this separate treatment of retail licenses is that the license is actually issued by the clerks of court, not the Comptroller.

[16]    The Senate Floor Report on the bill states that this amendment "[p]rohibits the Comptroller from accepting an offer of compromise from a licensee who has violated

13

One additional legislative development is worthy of note. In 2000, another departmental bill, HB 95, was introduced to require the Comptroller to investigate applicants for tobacco licenses and deny a license and or renewal for, among other reasons, if the applicant "is not a fit person to receive the license" or if "there are other reasons in the discretion of the Comptroller why the license should not be issued." This language was deleted from the bill by the House Economic Matters Committee. Instead, the Committee amended BR § 16-210(a) to add certain convictions as an additional ground for suspension, revocation and reprimand. *See* pp. 6-7, *supra*. A floor amendment in the House further limited a portion of this provision to certain misdemeanors that were "crime[s] of moral turpitude." This measure was enacted as Chapter 97, Laws of 2000.

### 4. Impact of Failed Legislation

To support the circuit court decision, Two Farms relies in part on the "amendment-rejection theory." It points to the failure in committee of HB 1015 in 2015. This bill, among other things, would have expressly authorized the Comptroller to suspend or revoke a license if the licensee failed to comply with laws regulating the sale of tobacco products to minors. In addition, language was deleted from what became Chapter 464, Laws of 1994 that would have mandated a license suspension for persons convicted of violating CL § 10-107.

Court of Appeals decisions on the amendment-rejection theory are not uniform. *Compare Allied*, 332 Md. at 304 (The failure to enact legislation prohibiting minors access

provisions of law concerning sales to minors." Senate Economic & Environmental Affairs Floor Report on SB 104 (1994).

14

to cigarette vending machines strongly suggests that there was no intent to allow local governments to enact such legislation) *with Goldstein v. State*, 339 Md. 563, 570 (1995) (Courts are reluctant to infer legislative intent from legislative inaction where there are several possible reasons for defeat).

The amendments "rejected" here show that there can be no easy reliance on the amendment-rejection theory. The 2015 legislation was largely a revenue measure that would have raised $4.4 million in annual tobacco licensing fees by 2020. *Fiscal & Policy Note on HB 1015* (March 10, 2015). To think the bill was killed in a single committee because of a provision authorizing license suspension/revocation would be blinking reality.[17] The same would be true of the 1994 legislation that would have *mandated* license suspension for convictions of CL § 10-107. Such a rejection tells us nothing about the General Assembly's views on *authorizing* suspension, particularly where, at the same session, the Legislature enacted, as an exception to the Comptroller's compromise authority, language that assumed that he had the power to suspend or revoke for illegal sales to minors. For these reasons, we will look to enacted, not rejected, legislation to resolve this case.

### 5. Are Illegal Tobacco Sales to Minors "Fraudulent or Deceptive Use" of a License?

Despite the widespread use in the Maryland Code of "fraudulent or deceptive use

---

[17] A more modest fee bill that would have expressly authorized discipline authority with respect to tobacco sales to minors (HB 546) also failed in 2003.

15

of a license," there is no Maryland case that explains the meaning of these terms.[18] However, out-of-state authorities, while not plentiful, are helpful.

Relevant caselaw does not mandate that the terms, "fraud or deceit," in a licensing statute be given their common law meaning. *Tompkins v. Bd. of Regents of Univ. of State of New York*, 87 N.E.2d 517, 521 (N.Y. 1949) ("Since the [physician licensing] statute is not concerned with private rights, it should not be construed to require that anyone actually has been misled so long as the intent is present."); and *Hughes v. Bd. of Architectural Examiners*, 80 Cal. Rptr. 2d 317, 322 (Court of Appeal 1998) ("There is nothing in the law or logic that requires the existence of a victim . . . before the Board may order a license revoked as part its efforts to protect the people of California from unscrupulous conduct").[19] *See generally*, Brian Rubens, *Common Law Versus Regulatory Fraud: Parsing the Intent Requirement of the Felony Penalty Provision of Food, Drug, and Cosmetic Act*, 724 U. Chic. L. Rev. 507 (2005).

This Court expressed similar views in *Stidwell v. Md. State Bd. of Chiropractic Examiners*, 144 Md. App. 613 (2002). There, we upheld the denial of certification of a massage therapist with respect to an applicant previously convicted of solicitation of prostitution. One ground for the denial was Stidwell's conviction for a "crime of moral

---

[18]     We do not intend to express any view as to the meaning of these terms in other licensing statutes. It is possible that the "fraudulent and deceptive use" language may be colored by other statutory grounds for licensee discipline. For example, now under the Medical Practice Act, there are 41 other grounds for physician discipline. *See* Md. Code (1987, 2014 Repl. Vol., 2017 Cum. Supp.) Health Occupations Article, § 14-404(a).

[19]     The statute in *Tompkins* prohibited fraud or deceit in the practice of medicine, while in *Hughes*, the law punished fraud or deceit in the practice of architecture.

16

turpitude." Rejecting her assertion that the statute embraced the common law definition, we said:

> Stidwell would benefit if our analysis ended with these criminal cases, . . . Her conviction, however, surfaced in the field of administrative law, where "moral turpitude" has evolved from its common law trappings into an even more fluid descriptive tool. Indeed, while Maryland's administrative and regulatory statutes repeatedly use the phrase "moral turpitude," that use is variable and inconsistent. Our review of theses [sic] statutory provisions reveals that, whereas for trials, the expression "moral turpitude" speaks primarily to truthfulness, for the business of professional licensing and public appointments, the expression strikes the broader chord of public confidence in the administration of government. That is, a person who has credibility to testify may not have the public's confidence to practice certain professions or to serve on a governmental board.

*Id.* at 618-19.

Caselaw aside, there is another reason why BR § 16-210(a)(2) does not lock into place common law understandings of fraud and deceit. We know from the 1988 Tax— General revision, *see* pp. 11-12, *supra*, that when the "fraud or deceit" language was enacted, the General Assembly was codifying so-called inherent agency authority derived from statutory source law, not from the common law.

Does freedom from the confines of the common law advance the Comptroller's case past the goal line? Not if just the text of § 16-210(a)(2) is our focus.

Highly instructive is the decision of the New York Court of Appeals in *Tompkins*. 87 N.E.2d 517. At issue was the proper interpretation of the words "fraud or deceit in the practice of medicine" as grounds for discipline in a physician licensing statute. Doctor Tompkins issued prescriptions for morphine to three persons -- one, who was an agent and

another, an informant for the Federal Bureau of Narcotics.  Tompkins believed that each

was an addict, but on the prescription, he noted that they were diagnosed with renal colic.

Although the Board contended that the physician's action violated federal and state law,

the court said it would only consider whether the "fraud or deceit charge" had been

demonstrated.  *Id.* at 520-21.  The appellate court went on to note:

> [I]t is urged that there is no proof of respondent's intent to
> defraud any one.  The board insists that the terms "fraud or
> deceit in the practice of medicine" are equivalent in meaning
> to "unprofessional conduct", which is a ground for discipline
> in other professions than medicine . . . .  Both contentions are
> wide of the mark. The words "fraud or deceit" must be read in
> light of their traditional meaning in the law . . . . and cannot be
> synonymous with "unprofessional conduct" a term which may
> signify activity quite unlike fraud in the customary sense.

*Id.* at 521.

Addressing the question of what persons were misled, the Court of Appeals said:

> The issuance of a prescription for narcotic drugs to an addict
> without proper medical basis is clearly an act which is
> *calculated to deceive those whose legitimate concern is the*
> *enforcement of the laws controlling trade in and consumption*
> *of narcotics*.  Such a prescription is more than a direction to the
> pharmacist. It plays an integral part of the system of control
> and, if not a true prescription, may throw that system awry.  It
> is clear that respondent was conscious of those facts, and
> therefore we must hold that his conduct constituted "fraud and
> deceit'" under section 6514.

*Id.* (Emphasis added).  The *Tompkins* court identified the parties hypothetically deceived

-- law enforcement officers who enforce the narcotics laws -- even though the federal

government, through the use of an agent and an informant, was not in fact deceived by the

18

doctor's actions.[20]

Although much in *Tompkins* is helpful to the Comptroller's case, one critical fact appears there and not here:  Dr. Tomkins falsified his prescriptions.  From a purely textual analysis, the *Tompkins* case takes the terms "fraudulent or deceptive" use of a license about as far as they can go.[21]   However, the Comptroller has another arrow in his quiver -- BR § 16-212(e)(1).

## 6.   What effect should be given to § 16-212(e)(1)?

The most perplexing issue in this case is what meaning we should ascribe to BR §

---

[20]     A February 17, 2005 advice letter to the Comptroller's office from Special Assistant to the Attorney General Marlene Trestman stated that illegal tobacco sales to minors by licensees may deceive both the minor and the Comptroller's office.  This letter superseded a July 15, 1998 legislative advice letter to the Hon. Samuel I. Rosenberg that questioned the Comptroller's authority to suspend or revoke a cigarette license for violation of CL § 10-102.  The 2005 letter said with some equivocation: "[M]inors are deemed incapable by their youth to reasonably avoid the harm from the sale and  . . . there *may* be implied representation by the merchant that the sale of the product is lawful."  (Emphasis added).  The advice letter also noted that "[t]he Comptroller's issuance of a license to sell cigarettes at retail contemplates that the licensee will sell cigarettes in a lawful manner."  With respect to the last point, it is noteworthy that in the Application of Cigarette and Other Tobacco Products (OTP) Licenses (available on the Comptroller's website), the applicant must attest under penalty of perjury that it "agree[s] to conform to all the laws, rules and regulations of the State of Maryland relating to the business in which they propose to engage under this license."  This application is used for seven different types of tobacco licenses, but not by those seeking a retailer's license from the clerk of court.  The record in this case does not contain Two Farms's application for a license.

[21]     The Comptroller also directs our attention to *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 950 P.2d 1086 (Cal. 1998) for the proposition that a cigarette sale to a minor equates to a fraudulent, unfair or deceptive business act under California's Unfair Competition Act.  However, that statute defines "unfair competition" as "any *unlawful*, unfair or fraudulent business act or practice."  *Id.* at 1090 (Emphasis added).  If the "unlawful" language appeared in BR § 16-210(a)(2), this case would be extremely relevant, but it does not.

16-212(e)(1)'s exception to the Comptroller's power to compromise a license suspension or revocation if the licensee violates CL § 10-107's prohibition on the sale of tobacco products to a minor. It seems obvious that when the General Assembly enacted this provision in 1994, it thought the Comptroller already had the power to suspend or revoke a license for such violations.

The Comptroller argues that the only language the Legislature must have had in mind is BR § 16-210(a)(2)'s authority to sanction a licensee for fraudulent or deceptive use of its license -- an interpretation we have previously noted does damage to the text.[22] Two Farms contends that the reference in § 16-212(e)(1) must be to § 16-210(a)(6)(ii)'s power to suspend or revoke if a licensee is convicted of "a misdemeanor that is a crime of moral turpitude . . . ." However, this proffered construction is extremely doubtful, because the quoted language was not added to the law until 2000 -- six years after § 16-212(e)(1).[23] The hardest alternative to accept is that the General Assembly was simply mistaken when it thought the Comptroller had the power to suspend or revoke a license for illegal tobacco sales to minors. While the 1994 change is not controlling as to the meaning of preexisting law, it is some indication of legislative intent. Moreover, we strive to give effect to all of

---

[22]    On the other hand, we reject as unreasonable the notion that the Legislature in § 16-212(e)(1), had in mind only those rare or hypothetical cases of illegal sales to minors perpetuated by the actual fraud of retail licensees.

[23]    Aside from the fact that one provision uses the terms, "violation," while the other uses "conviction," there might be other difficulties with Two Farms's argument. At common law, a violation of CL § 10-107 probably would not have been a crime of moral turpitude, although it might qualify under the more liberal interpretation we have given to "moral turpitude" in licensing statutes. *See Stidwell*, 144 Md. App. 613. This is a question we need not decide, because this case does not involve a conviction for violating § 10-107.

20

the language in a statute and to avoid a construction that would render BR § 16-212(e)(1) superfluous or illusory. *See* p. 9, *supra*. In light of this principle, we consider one more alternative construction of the 1994 exception.

**7. Does the Comptroller have the "implied" or "inherent" authority to suspend or revoke a license for illegal sales of tobacco products to minors?**

As Justice Frankfurter has suggested, we now explore "what is below the surface of the statute and yet fairly part of it." Frankfurter, *supra*, 47 Colum. L. Rev. at 533. The text and legislative history of the relevant statutes make it clear that CL § 10-107 and Title 16 of the Business Regulations Article are joined at the hip.[24] In 1994, the General Assembly expressly included Title 16 licensees within the prohibition of CL § 10-107.[25] At the same session, the Legislature amended BR § 16-210(a) to include violations of Title 16 as a ground for suspension or revocation of a license. And the same legislation included the troublesome exception to BR § 16-212(e) for CL § 10-107 violations -- a further indication that the two statutes are tied together.

The 1994 amendments to CL § 10-107 reinforce Judge Rodowsky's conclusion that this provision creates a "class of ineligible purchasers." *Allied Vending*, 332 Md. at 327. Because licensees may only sell tobacco products to a lawful "consumer," BR § 16-101(e), a licensed retailer illegally making such a sale to a minor is acting outside the scope of its license and thus, violates Title 16. Does the law leave the licensing agency, and the

---

[24] The Latin term for this aid to statutory construction is *in pari materia* -- statutes on the same subject are construed together.

[25] No doubt, such licensees were already covered by the statute. However, the express inclusion is not without significance.

21

Comptroller, powerless to discipline a licensee under such circumstances?  We think not.

According to 51 Am. Jur. 2d Licenses & Permits at § 56, "[i]n the absence of constitutional limitations, the ultimate authority from which a license to carry on as a particular activity derives[,] has inherent power to withdraw the license."  *See also State ex rel. Morris v. West Virginia Racing Comm.*, 55 S.E.2d 263, 271 (W. Va. 1949) ("[T]he power vested in a board or commission to issue a license . . . implies the power to revoke a license for good cause."); and *Matter of A-1 Jersey Moving & Storage, Inc.*, 706 A.2d 752, 755-56 (W.S. App. Div. 1998) (A licensing body with disciplinary authority has the inherent power to revoke a license for failing to comply with lesser sanctions, even though the licensing statute does not list this offense as a ground for suspension or revocation). *See also* Advice Letter of Special Assistant Trestman, *supra* at n. 18 ("The Comptroller's issuance of a license to sell cigarettes at retail contemplates that the licensees will sell cigarettes in a lawful manner.").

At one time -- more than 70 years ago -- Maryland courts would not have subscribed to such a rule.  In 1943, in *Burley v. Cty. of Annapolis*, 182 Md. 307 (1943), a divided Court of Appeals overturned a municipality's revocation of a billiards license.  The revocation was premised on the fact that gambling was occurring on the premises, a cause not specified in the licensing ordinance.  Citing *American Jurisprudence* and other authorities, the majority said: "Where a statute or ordinance authorized the revocation for causes enumerated, such licenses cannot be revoked on any ground other than the cause specified." *Id.* at 311 (Internal quotation omitted).  In the last 70 years, no Maryland case has cited *Burley* for this proposition.  In 1991, West Virginia's highest court suggested that the

22

Maryland case was contrary to the rule recognized by the majority of jurisdictions for certain implied grounds for licensee discipline. *Mounts v. Chapin*, 411 S.E.2d 481, 487 (W. Va. 1991). And as noted earlier, p. 21 *supra*, 51 Am. Jur. 2d Licenses & Permits at § 56 now recognizes the inherent power of a licensing agency to withdraw a license.

More importantly, the Court of Appeals has broadly affirmed the implied authority of licensing agencies in *Lussier v. Md. Racing Comm'n*, 343 Md. 681 (1996). There, the Court upheld the Commission's authority to impose a monetary penalty of up to $5000 for violations of an agency regulation, despite the lack of express statutory authorization. *See also Thanner Enterprises, LLC v. Baltimore Cnty.*, 414 Md. 265, 276-77 (2013) (citing *Lussier* for the proposition that a sanction imposed by a licensing agency may be "impliedly authorized").[26]

Whether *Burley* is still good law is an issue for the Court of Appeals. We need not decide it here. The text and history of the relevant statutes in this case manifest a legislative intent not present in *Burley* -- that aside from the express statutory grounds for suspension or removal of a retailer's license -- an implied cause exists for illegal sales to minors that would violate CL § 10-107.

First, in Title 16 of the BR Article -- and 56 other licensing statutes rewritten during

---

[26]     *Burley* also represented a rote application of the canon of statutory construction *expressio unius est exclusio alterius* (The expression of one is the exclusion of the other). More modern Court of Appeals decisions state that this canon should be used with "extreme caution" so that it is not applied to override the intention of the Legislature. *Breslin v. Powell*, 421 Md. 266, 294 (2011); and *Potomac Abatement, Inc. v. Sanchez*, 424 Md. 701, 112-13 (2012).

the code revision process -- the General Assembly itself made it clear that licensing authorities have an implied, if not "inherent," power to suspend or revoke a license for certain "fundamental" reasons. *See* pp. 11-12, *supra*.

Second, like a fraudulent application for or use of a license, acting outside the scope of a license is a fundamental ground for suspending or revoking a license.

Third, a retail licensee acts outside the scope of its license when it illegally sells tobacco products to a minor, an ineligible purchaser, in express violation of CL § 10-107.[27] Such misconduct impliedly violates Title 16 of the BR Article, a specific ground for license suspension or revocation under the 1994 amendment to BR § 16-210(b)(2).

Fourth, CL § 10-107 expressly embraces retail licensees and BR § 16-212(e)(1) ties licensee discipline to violations of CL § 10-107.

In short, the Comptroller has not pulled this ground for suspension out of thin air. Suspension for illegal tobacco sales to minors is consistent with the text and history of the relevant statutes and the express assumption of the General Assembly. To conclude otherwise would lead to an absurd and unreasonable result that the holder of a retail license is immune from administrative sanction for harmful conduct, despite the Legislature's efforts to tie both together. Finally, our interpretation does not render BR § 16-212(e)(1) ineffectual or surplusage or run counter to the language of the statute.

---

[27] Because the Legislature has so forcefully expressed its intent in linking the licensing provisions and CL § 10-107, we conclude that an illegal sale to a minor is an act outside the scope of the license. We express no view on what other actions, if any, by a licensee would fit that description or would constitute an implied ground for disciplinary action.

24

Thus, we conclude that a retailer that illegally sells tobacco products to a minor may have its license suspended under BR § 16-210(b)(2) for violating "Title 16 of the Business Regulations Article."[28]

### 8. Who Wins? Who loses?

The Comptroller may have won the war in this case; but he has lost this battle. A court may not uphold an agency decision on any basis other than the findings or reasons stated by the agency. *Johnson v. Criminal Injuries Compensation Bd.*, 145 Md. App. 96, 106 (2002). While a court's decision may be upheld as right for the wrong reason, an agency decision must be "right for the right reason." *Mueller v. People's Counsel for Baltimore Cnty.*, 177 Md. App. 43, 84 (2007).

Two Farms was accused of violating BR § 16-210(a)(2) for fraudulently or deceptively using its license and adjudicated liable for the same reason. We cannot affirm the Comptroller's decision on this basis and, in fact, reject that administrative determination. Because the agency here is not right for the right reason, we must uphold the circuit court's decision in favor of Two Farms.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[28]     Subsection (b)(2) also authorizes licensee discipline for violations of regulations adopted under Title 16. If the Comptroller exercises the disciplinary authority that we recognize here, it may be wise for the office to adopt a regulation expressly specifying violation of a statute or ordinance barring illegal sales of tobacco products to minors as a ground for license suspension or revocation. Such a regulation would obviate any fair notice issues.